# CASES DETERMINED

IN THE

# SUPREME COURT

OF THE

# STATE OF MISSOURI

AT THE

## OCTOBER TERM, 1913.

---

(*Continued from Volume 256.*)

---

THE STATE ex rel. JOHN G. PAXTON v. JULES
EDGAR GUINOTTE, Judge of Probate Court.

In Banc, April 2, 1914.

1. **LUNACY INQUIRY: Dismissal.** A proceeding in the probate
court in its nature under the statute a lunacy inquiry cannot
be dismissed at will by him who brings it. The petitioner does
not have such absolute control of the proceeding that, regard-
less of the objections of the person whose sanity is under in-
quiry and of the discretion of the probate court, he can dismiss
it at any stage of the proceedings upon the payment of the
costs accrued.

2. ———: ———: Civil Action: Adversary. A lunacy inquiry is
a civil action and is adversary, as contradistinguished from an
*ex parte* proceeding; but the real parties are the public at large
and the person whose sanity is in question. But the fact that
it is a civil action and adversary, does not mean that it can
be dismissed at the will of the petitioner over the objection of
such person. The interest of the petitioner is but negligible
and utterly subordinate to that of the public and to that of

the person under inquiry, and the proceeding should not be dismissed without the consent of the probate court acting in its discretion for the best interest of the public and the person alleged to be of unsound mind, and such consent should not usually be given over the objection of such person.

Certiorari.

WRIT QUASHED.

*Cowherd, Ingraham, Durham & Morse* and *Clark & Houts* for relator.

(1) A plaintiff may dismiss any suit pending in a court of record at any time before it is finally submitted to the court or jury. R. S. 1909, secs. 1979-1980; Houston v. Thompson, 87 Mo. App. 63. The rule in will contest cases is not applicable to other cases. Benoist v. Murrin, 48 Mo. 48; Hughes v. Burris, 85 Mo. 660; Norton v. Paxton, 110 Mo. 456. (2) An insanity proceeding is a "suit" within the meaning of the statutes providing for dismissal and non-suit. R. S. 1909, secs. 480, 481, 529, 1727, 1756, 3845; Ackerle v. Wood, 95 Mo. App. 378; Clinton v. Clinton, 223 Mo. 371; State ex rel. v. Dickman, 157 S. W. 1012; State ex rel. v. Holtcamp, 235 Mo. 232; State ex rel. v. Montgomery, 160 Mo. App. 724; Dougherty v. Snyder, 97 Mo. App. 495; Morris v. Morris, 128 Mo. App. 673; Berry v. Berry, 147 Ind. 176; Hunt v. Searcy, 167 Mo. 158. Cases denying the right of appeal are not in point. State ex rel. v. Dickman, 157 S. W. 1012; State ex rel. v. McQuillin, 246 Mo. 586. (3) The informant is the "plaintiff" and has the right to dismiss under the statutes. Secs. 481, 1727, R. S. 1909; 6 Words and Phrases, 5397; cases supra.

*Rozzelle, Vineyard & Thacher* for respondent.

(1) Relator's contention that because he gave the information which satisfied the court that the facts should be inquired into by a jury, he had the absolute

right to dismiss the inquiry and that when he filed his application asking that the inquiry be dismissed, the court lost its jurisdiction, is based on the section of the Code of Civil Procedure in circuit courts, which is:

"Section 1980. The plaintiff shall be allowed to dismiss his suit or take a nonsuit at any time before the same is finally submitted to the jury, or to the court sitting as a jury or to the court, and not afterwards." Respondent contends that the probate court had jurisdiction of the subject-matter and of the person, and that the application of relator for leave to withdraw the information given by him to the court and for a dismissal of the proceedings did not oust the court of the jurisdiction it was exercising on behalf of the alleged unfortunate and the public. State ex rel. v. Hinds, 148 Mo. App. 305; Allen v. Dodson, 39 Kan. 220; Smith-Fraser V. & S. Co. v. Derse, 41 Kan. 150; Noys v. Derse, 41 Kan. 153; Bond v. White, 24 Kan. 306; Wilder v. Boynton, 63 Barb. 547; Young v. Bush, 36 How. Pr. 242; Adger v. Prindle, 11 S. C. 527; State v. Wear, 145 Mo. 205. Respondent further contends that section 1980 of the Code of Civil Procedure does not apply to sanity inquests in probate courts and where the probate court has jurisdiction over the subject-matter and of the person of an alleged idiot, lunatic or person of unsound mind and has ordered the facts to be inquired into by a jury as provided by statute, a request of the informer or other person that the inquiry be dismissed does not operate to dismiss the proceeding and that the dismissal rests in the sound discretion of the court and the request should not be granted without good cause of objection is made. (2) The necessity as well as the duty of the state to protect the estates of incompetent persons and to guard incompetents against harm to themselves and the public is a sovereign power which in England the King as *parens patriae* exercised through the lord chancellor by virtue of a standing warrant under the king's Sign-Manual

and wholly distinct from his chancery jurisdiction
under the Great Seal. Buswell on Insanity, secs. '28,
29; Ex parte Grimstone, Amb. 206; Buford v. Lenthall,
2 Atk. 551; In re Fitzgerald, Ll. & Gt. Pl. 20, 2 Sch. &
Lef. 432; In the Matter of Heli, 3 Atk. 635; Oakley v.
Long, 29 Tenn. 254. The adjudicated cases hold that
the conduct of sanity inquiries in the United States is
not derived from the common law nor the equity branch
of chancery practice. This is also evidenced by the
fact that the Federal courts have no such jurisdiction.
Fontain v. Ravenel, 17 How. 391; Hoodley v. Chase,
126 Fed. 818; 129 Fed. 1005. It has also been held that
the duty of caring for the persons and property of in-
sane persons being in the states, the power to hold
inquests and care for the person and property of in-
sane persons should be assumed by courts having
equity powers wherever the constitution or statutes did
not make provision for such inquests, but that this
power was assumed on grounds of public policy and
*ex necessitate* and not as a branch of equity jurisdic-
tion. Buswell on Insanity, sec. 29; Yeomans v. Wil-
liams, 117 Ga. 800. (3) Probate court procedure in
sanity inquests is a complete statutory code within it-
self and is not governed by the general code of civil
procedure. Young v. Boordman, 97 Mo. 190; Cox v.
Osage County, 103 Mo. 389; Bradley v. Woener, 46 Mo.
App. 371; Morris v. Lane, 44 Mo. App. 1; Galbreath v.
Black, 89 Ind. 300; Ruhlman v. Ruhlman, 110 Ind. 314;
In re Murtaugh, 102 N. Y. Supp. 177; Benoist v.
Murrin, 48 Mo. 48; Bradford v. Blossom, 207 Mo. 228;
Cash v. Lust, 142 Mo. 637; McMahon v. McMahon, 100
Mo. 99. A proceeding to determine whether a person is
of unsound mind and incapable of managing his af-
fairs is likewise a proceeding *in rem* and the absolute
right to dismiss is for like reasons "in conflict with
public policy." Cockrill v. Cockrill, 79 Fed. 134, af-
firmed 92 Fed. 811; Browning v. Chrisman, 30 Mo. 353;
Adderton v. Collier, 32 Mo. 507; Harris v. Sanders,

38 Mo. 421. Probate courts are clothed with certain jurisdiction by the Constitution and statutes and have no common-law or equity jurisdiction. Ferris v. Highley, 87 U. S. 375; Holbrook v. Cook, 5 Mich. 228; Deming Co. v. Webb, 76 Mo. App. 337; In re Estate of Glover & Shipley, 127 Mo. 153; Railroad v. Probate Judge, 63 Mich. 676; In re Wells, 67 N. Y. Supp. 631. (4) An insanity inquiry is a summary proceeding and the institution and control of the inquiry is in the sound discretion of the court. (a) Ordering an inquiry is a matter of discretion. In re Clifford, 57 N. J. Eq. 14; R. S. 1909, secs. 474, 529; In re Zimmer, 14 Hun, 214. (b) Evidence sufficient to invoke the exercise of this discretion. In re Latta, 43 Kan. 533; In re Chudek, 118 Mich. 361; Berthia v. McLennon, Ired. L. 523. (c) The person giving the information need not be personally interested. In re Burke, 125 N. Y. App. Div. 889; Baker v. Searle, 2 R. I. 115; Shenango Tp. v. Wayne Tp., 34 Pa. St. 184; Territory v. Gallatin County, 6 Mont. 297; Foran v. Healey, 73 Kan. 637. (d) Dismissal of sanity inquiry at the request of the informant is discretionary with the court. R. S. 1909, sec. 531; State ex rel. v. Johnson, 138 Mo. App. 306; Florez v. Uhrig, 35 Mo. 519; Jones v. Traction Co., 137 Mo. App. 411; Ensor v. Smith, 57 Mo. App. 584. (e) There was no abuse of the court's discretion in denying the application to dismiss the proceedings.

FARIS, J.—This is an original proceeding by *certiorari,* to bring up the record of the probate court of Jackson county, in the matter of an inquiry formerly pending in that court, touching the sanity of one Jane Eliza Plunket.

Jane Eliza Plunket is the wife of Dr. J. D. Plunket, of Nashville, Tennessee. She was the sister of Thomas H. Swope, deceased, and by the will of the latter there was bequeathed to her the sum of $10,000, together with a devise of a half-interest in a certain building situate

on Main street in Kansas City, Missouri. Upon an in-
quest of lunacy had at Nashville she was adjudged to
be a person of unsound mind and a curator. of her
property appointed for her. This curator, one Robert
Vaughan, a resident, of Nashville, had joined with
Mrs. Plunket's cotenant in the Kansas City property
in making a lease thereof for a term of years to Oppen-
stein Brothers. The latter being, as the petitioner in
the insanity proceeding averred, apprehensive touch-
ing the validity of a lease of Missouri real estate ex-
ecuted by a foreign curator of one who had been ad-
judicated a person of unsound mind, Vaughan had his
attorney, the relator Paxton herein, to institute in the
probate court of Jackson county, of which respondent
herein is the judge, an inquiry into the sanity of Mrs.
Plunket, pursuant to the provisions of section 529,
Revised Statutes 1909. Notice of this proceeding was
served on Mrs. Plunket in Nashville, Tennessee, where-
upon, in response thereto, she came to Kansas City and
procuring counsel, arranged to defend against the pro-
ceeding to have her adjudged insane. Relator there-
upon went into the probate court and asked leave to
dismiss the proceeding, averring his willingness to pay
all costs of whatever kind accruing upon the inquiry up
to the time of his asking leave to dismiss. Mrs. Plunket
resisted relator's efforts to dismiss, and to this end
filed in the probate court strenuous suggestions in op-
position thereto, which suggestions being duly con-
sidered by the court, were sustained for the reasons
set out in the finding and order of the court, which
finding and order as they may be pertinent, and are
cogent, we subjoin:

"Now on this day this matter coming on to be
heard on the original and supplemental application of
John G. Paxton for leave to withdraw the information
in writing given to the court and dismiss this proceed-
ing and the same, together with the answer and cross
petition under oath of Jane Eliza Plunket filed prior

to the filing of said original application praying that the proceeding shall not abate, but that it should be tried and the objections under oath of the said Jane Eliza Plunket to the granting of such leave and also her objections to granting the leave requested in such supplemental application each and all having been by the court seen, heard and fully considered, the court finds:

"That the information in this matter was filed April 11, 1913, and was set for hearing April 28th. Notice of such information and setting requesting her to be present was served on Jane Eliza Plunket on April 14th.

"That in answer to this notice she came here from Nashville, Tennessee, and appeared in person on the 28th day of April, the day set for impaneling the jury and she has since remained here for the purpose of attending the inquiry and has employed counsel and in her statement says she has obtained expert medical testimony to be used at the trial and has incurred large expense.

"That the proceeding has regularly been continued from time to time since that date.

"That she filed on May 19th an answer under oath to the written information praying that the proceeding should not abate, but that it should be tried.

"That the original application for leave to dismiss was filed May 24th, and she filed in writing, under oath, objections to the dismissal, reciting in detail why such dismissal would result in great hardship and irreparable loss and injury to her.

"That it is not disputed that she is the owner of real estate on Main street in Kansas City, Missouri, of the value of more than one hundred thousand dollars and renting for more than six thousand dollars a year which is not in the lawful possession of any responsible person and that all the statements in the information, as well as in the answer and in the written

objections, with the exception of the statement that she is of unsound mind and incapable of managing her affairs, are undisputed and being made under oath, are in this ruling accepted as true.

"That this is a special statutory proceeding in which the constitution and statutes vest the jurisdiction in the probate court and the right to dismiss rests in the discretion of the court and should not be granted when it would work a hardship or injury to a person of alleged unsound mind and that person demands a trial.

"That it is not claimed that there has been and there has not been any changes in the facts since the proceeding was begun as to the necessity of a guardian, and considering the statements under oath contained in the information and in answer and objections of the said Jane Eliza Plunket, great injustice would be done her by dismissing the proceedings.

"That the supplemental application this day filed to withdraw the information given in writing to the court and to dismiss the proceeding is in substance the same as the original application and the objections of the said Jane Eliza Plunket to the granting of the leave requested in said supplemental application are the same in substance as her objections to granting the leave requested in the original application.

"That the application and supplemental application for leave of court to withdraw the information and dismiss this proceeding are, for the reasons shown in the information and in the answer and cross petition to the information and in the written objections to the granting of such leave, therefore, denied.

"The matter of costs is in the discretion of the court and if John G. Paxton, the informant, objects to further proceedings herein he should not be taxed with costs of such further proceedings regardless of the final determination of this proceeding. It is

further ordered by the court that this case be set for hearing on June 19, 1913, at ten o'clock a. m.''

Thereafter the probate court proceeded with the inquiry before a jury, apparently in the usual way prescribed by statute. This jury, after a hearing, returned its verdict finding Mrs. Plunket to be a person. of sound mind, and an order of the probate court was entered accordingly.

This proceeding is brought here to test the legal correctness of this action of the probate court. Upon application made to us by said John G. Paxton, as relator, we issued a preliminary rule to respondent, Judge Jules E. Guinotte, judge of the probate court of Jackson county, requiring him to send up to us a full and true transcript of all pleas and proceedings and the record in said inquiry, and to show cause why the judgment of the probate court in the behalf aforesaid should not be quashed and for naught held. Respondent duly made return denying that his action as judge of the probate court was unlawful, and, complying fully with our further order, sent up to us the transcript of all pleas and proceedings.

In passing it is but fair to say that Mrs. Plunket, upon an inquiry touching her sanity, had at an indefinite date in the year 1911 before the chancery court at Nashville, in Davidson county, Tennessee, having jurisdiction in that behalf, been found by a jury to be sane. This finding was set aside by the judge of the court holding the inquest and a finding by the court entered that she was a person of unsound mind. This latter finding was affirmed upon appeal, and said Robert Vaughan, who was by the probate court of Tennessee appointed curator of her property (she had no guardian of her person), has since been acting in that capacity, and as we state above, executed the lease of her Missouri property.

In the Tennessee inquiry many witnesses were called, 107 it is said in all, and some 1600 pages of

testimony were taken. It is only fair, though con-
cededly not pertinent, to say that Mrs. Plunket made
profert to relator of the use of this evidence, offering
to waive any objections to its competency, and to per-
mit relator, in whose possession, as petitioner in the
insanity proceeding, a copy of all this testimony was,
to offer the whole of it.

## OPINION.

It will appear from the statement of facts that
there is but one question in this case, which is:   May
a proceeding under our statute in the nature of the writ
**Lunacy Inquiry:** *inquirendo de lunatico,* be dismissed at
**Dismissal by** will by him who brings it?   Has the
**Informant.** petitioner under the statute so far the
absolute control of the proceedings as that, regardless
of the objections of the person whose sanity is under
inquiry, and of the discretion of the probate court, he
has the absolute right to dismiss it at any stage of the
proceeding upon the payment of the costs accrued?
This is the concrete case before us.   If such petitioner
has the absolute and arbitrary right to quit at will,
then the writ herein should go, quashing the action of
the probate court which held to the contrary view.

*In limine,* we should say that there is no point made
in the case of conflict of jurisdiction as between the
courts of this State and those of the State of Tennessee.
[Commonwealth v. Kirkbride, 2 Brewst. 419; Herndon
v. Vick, 18 Tex. Civ. App. 583; Ex parte Gillam, 2
Vesey, Jr., 587.] Upon the question of whether there
could arise such conflict, since insanity *vel non* is in a
sense a transitory status, making us in law insane to-
day and sane to-morrow, or *vice versa,* as the probate
court may hold, and since the judgment decreeing the
status is never final, and is not *res adjudicata* (State
ex rel. v. McQuillin, 246 Mo. 586), we are not therefore
called on to say.   We do not say and are not required

to say, whether a person may be insane on the east side of the Mississippi river and sane on the west side thereof or not. That point is not in the case. The point here is, and is only, touching the control which relator has over the proceeding in the probate court.

Learned counsel for relator insist that inasmuch as this court (State ex rel. v. Holtcamp, 235 Mo. 232; Hunt v. Searcy, 167 Mo. 158), as well as the St. Louis Court of Appeals (State ex rel. v. Dickman, 157 S. W. 1012), has held that an inquest *de lunatico* is a "civil case," and that the same is an adversary, as contradistinguished from an *ex parte* proceeding, such consideration practically settles the question vexing us. We concede that the holdings have been thus and as above epitomized. It has also been held that probate courts are courts of record and in practice, where not otherwise provided, may borrow from the code. [Clinton v. Clinton, 223 Mo. l. c. 388.]

Such concessions prove nothing and are beside the question. Will contests likewise are civil actions, and civil suits, and in the form thereof always adversary, as opposed to *ex parte* proceedings. Yet such actions may not be dismissed by the plaintiffs against the will of the defendants. The answer is mayhap that such rule in a will contest case arises from the peculiar nature of the case. We cheerfully grant this and answer that likewise and similarly the distinction which we think we see in the instant case and which differentiates it from the ordinary civil action or civil suit, arises from the peculiar and inherent nature of the case. Who are the parties in interest in an inquest *de lunatico* under our statute? Manifestly, (a) the public at large, that it may not suffer in person or property from the dangerous vagaries or mania of the individual alleged to be of unsound mind, and for that such person by a dissipation of his property, may not become a charge upon the public purse, and (b) the person whose mind is under suspicion, the alleged

crazy person, that he may not suffer from the detention of his property or person in the custody of another. If there be others who are interested, in reason, they fall into the class of the general public, already mentioned, or they fall out of consideration because they act from sinister personal motives of self-interest, not fairly to be taken into account as producing an interest in the law to be reckoned with here.

The courts pretty generally take this view of the case. In the case of Gerke v. Colonial Trust Co., 117 Md. l. c. 583, it was said:

"The contention of the appellant is that the proceeding for an adjudication in lunacy and the appointment of a committee is one which ordinarily is and should be instituted upon the initiative of a member of the family of the lunatic. It is undoubtedly true that in the vast majority of the cases such a proceeding is so instituted, but that fact by no means precludes the institution of such a proceeding by some person other than a relative or member of the family. It is matter of frequent occurrence that proceedings of this character are set in motion by some friend or acquaintance of a lunatic, or even by a law officer of the State where no such proceedings has been started by relatives and friends, and that with which the courts are mainly concerned is not who institutes the proceedings but whether the proceeding is for the best interest of the individual alleged to be lunatic, and of the people among whom he lives."

In the Murtaugh case on this question it was said:

"Section 3333 of the Code of Civil Procedure defines an 'action' in the following words: 'The word "action," as used in the new revision of the statutes, when applied to judicial proceedings, signifies an ordinary prosecution, in a court of justice, by a party against another party, for the enforcement or protection of a right, the redress or prevention of a wrong, or the punishment of a public offense.'

"By section 3334 a 'special proceeding' is thus defined: 'Every other prosecution by a party, for either of the purposes specified in the last section, is a special proceeding.'

"The surrogate was probably right in holding that this was not a special proceeding within this definition. The proceeding is one for the protection of the alleged lunatic and for the protection of society. The petitioner neither gains nor loses by the order entered therein. No right is enforced, no wrong redressed, no public offense is punished. Moreover, the intention of the lawmakers is manifest to make special provisions for this proceeding, and not to bring the proceeding within the general rules of the Code of Civil Procedure governing special proceedings." [In re Murtaugh, 102 N. Y. Supp. l. c. 177.]

Likewise the Supreme Court of Indiana said in the case of Ruhlman v. Ruhlman, 110 Ind. l. c. 315:

"We agree that the proceedings are, in a sense, special and statutory, and that they are not in all respects subject to the provisions of the civil code. They are not civil actions. Such proceedings are, however, peculiarly under the jurisdiction and control of the court. The persons and estates of the insane, or those alleged to be insane, are the subjects of protection and care of courts having probate jurisdiction. When the proceeding is instituted, the matter is then under the direction of the court, even to the extent of authorizing it to cause the seizure of the body of the person alleged to be of unsound mind. The statute under consideration makes no provision for a dismissal, nor does it provide for an appeal to this court. The court may or may not authorize or permit the petition to be dismissed. In Galbreath v. Black, 89 Ind. 300, it was held that the court ought not to allow the proceeding to be dismissed without the consent of the person alleged to be of unsound mind."

Upon this point, as also upon one phase of the petitioner's attitude in law, toward the proceeding, it was said in the case of Hughes v. Jones, 5 L. R. A. 632, that:

"The primary object of the proceeding is not to benefit any particular individual, but to see whether the fact of mental incapacity exists, so that the public, through the courts, can take control. The petitioner can derive no direct benefit from it. The advantage to him, if any, is only such as would result if any other person had first acted in the matter.

"Attentive study of the history, nature and object of lunacy proceedings leads to the conclusion that the petitioner therein is not a party to the record so as to be personally estopped by the finding of the jury, except as all the world is estopped."

It was said in the above case that this condition, that is, the peculiar attitude of the law toward an inquest *de lunatico,* as well as toward the one who as petitioner put the inquest in motion, arose from the fact that anciently the King as the political *parens patriae* assumed custody "as guardian of his subjects." Further it is said that in this country the proceedings are "instituted in behalf of the people of the State who succeeded to the rights of the King in this regard." [Hughes v. Jones, supra.] The upgrowth of this view, the ancient laws and the logic of the position are thus set out in the case, supra:

"The origin and history of lunacy proceedings throw some light upon the subject. It was provided by an early statute in England that 'the King shall have the custody of the lands of natural fools (idiots), taking the profits of them without waste or destruction, and shall find them in necessaries, of whose fee soever the land be holden. And after their death he shall restore them to their rightful heirs, so that no alienation shall be made by such idiots, nor their heirs be in anywise disinherited.' [17 Edw. II, chap. 9.]

"The same statute provided for lunatics, or such as might have lucid intervals, by making the king a trustee of their lands and tenements, without any beneficial interest, as in the case of idiots, who were the source of considerable revenue to the crown. [Id., chap. 10; Beverley's Case, 4 Coke, 127; 1 Bl. Com., chap. 8, sec. 18, p. 304.] This statute continued in force from 1324 until 1863. [Ordronaux, Jud. Aspects of Insanity, p. 4.]

"The method of procedure thereunder is described by an early writer as follows: 'And, therefore, when the king is informed that one who hath lands or tenements is an idiot, and is a natural from his birth, the king may award his writ to the escheator or sheriff of the county where such idiot is, to inquire thereof.' [Fitzherbert, De Natura Brevium, 232.]

"The object of the writ was to ascertain by judicial investigation whether the person proceeded against was an idiot or not, so that the king could act under the statute; for his right to control idiots or lunatics and their estates did not commence until office found. [Shelf. Lun. p. 14.]

"Subsequently authority was given to the Lord Chancellor to issue the writ or commission to inquire as to the fact of idiocy or lunacy, and the method of procedure was by petition suggesting the lunacy. [Ibid.; Re Brown, 1 Abb. Pr. 108, 109.]

"It was the ordinary writ upon a supposed forfeiture to the crown, and the proceeding was in behalf of the king as the political father of his people. [Ibid.; Fitzherbert, De Natura Brevium, 581.]

"As the means devised to give the king his right of solemn matter of record, it was necessary before the sovereign could devest title. [3 Bl. Com. 259; Phillips v. Moore, 100 U. S. 208, 212, 125 L. Ed. 603, 604; Anderson, Dict., title Office Found.]

"It was used to establish the fact upon which the king's rights depended, as in the case of an alien who

could hold land until his alienage was authoritatively established by a public officer, upon an inquest held at the instance of the government. Whether the basis of action was infancy or alienage, or otherwise, the proceeding was in behalf of the public represented by the king. [Ibid.]

"The inquisition was an inquiry made by a jury before a sheriff, coroner, escheator or other government officer, or by commissioners specially appointed, concerning any matter that entitled the sovereign to the possession of lands or tenements, goods or chattels, by reason of an escheat, forfeiture, idiocy and the like. [Chitty, Prerog. 246, 250; Staunf. 55; Rapalje & L., L. Dict. title Inquest of Office.]

"Thus the law came to us from England, and after the Revolution the care and custody of persons of unsound mind and the possession and control of their estates, which had belonged to the king as a part of his prerogatives, became vested in the people, who by an early act confided it to the chancellor and afterward to the courts."

If then it be that the interest of the petitioner in the case (costs which our statute regulates excepted), is thus but negligible, it would seem to follow that when an inquest touching the sanity of a person is thus begun in this State under our statute, the interest of the petitioner being found in the ancient history and logic of the case to be utterly subordinate to the interest of the public and to that of the person under inquiry, the petitioner may not dismiss the inquest unless the probate court consent. The matter solemnly begun upon the oath of petitioner (Royston's Appeal, 53 Wis. 612; 22 Cyc. 1143), ought not to be dismissed at the will, whim or caprice of the latter, or at all unless the probate court, in whom the law has vested the matter as the successor *pro hac vice* of the king, should in his discretion see fit to allow a dismissal.

The same result was reached in the case of Galbreath v. Black, 89 Ind. 300, which was upon the facts and the precise point up for ruling, a case upon all-fours with the case at bar. In this case it was said:

"We are of the opinion that in such a proceeding as the one at bar the party making the complaint can not dismiss such proceeding without the consent of the court before whom the same is pending, and that, as a rule, such consent ought not to be given, over the objections of the person alleged to be of unsound mind. Such a person is entitled, we think, if there is a failure of evidence to sustain the complaint, to the verdict of the jury finding that he is not of unsound mind; and the complaining party ought not to be permitted to deprive him of such right, over his objections, by the dismissal of the proceeding or the withdrawal of such complaint. It seems to us, therefore, that the court committed no error in overruling appellant's motion for leave to dismiss the proceeding and withdraw her petition."

Some of the reasoning of the court in the above case has been criticized by later holdings of the Indiana Supreme Court, but the result reached has not been overturned or questioned. [Berry v. Berry, 147 Ind. 176.] In the case of Ruhlman v. Ruhlman, 110 Ind. 314, the doctrine of Galbreath v. Black as to petitioner's lack of the right to dismiss, was reiterated with approval. In Berry v. Berry, supra, while criticizing and overruling the argument in Galbreath v. Black that inquests *de lunatico* are *ex parte* and not adversary, and that they are not civil actions, the court yet said:

"We have no occasion to disagree with the conclusion there reached, but it is certain that more recent decisions hold that such proceedings are not *ex parte*, but are adversary, and that notice is indispensable unless waived. [Martin v. Motsinger, 130 Ind.

257 Mo. 2

555; Jessup v. Jessup, 7 Ind. App. 573.] It has been held by this court also that an action 'is any judicial proceeding which, conducted to a termination, will result in a judgment,' and that a civil action 'is an action wherein an issue is presented for trial, formed by the averments of the complaint, and the denials of the answer, or the replication to new matter and the trial takes place by the introduction of legal evidence to support the allegations of the pleadings, and a judgment in such an action is conclusive upon the rights of the parties and could be pleaded in bar.' [Evans v. Evans, 105 Ind. 204, citing Deer Lodge Co. v. Kohrs, 2 Mont. 66, 70.]''

Our courts have, likewise touching the nature of the proceeding, reached the identical conclusion reached by the Indiana courts, that is to say, that the proceeding is a civil action, certainly as contra-distinguished from a criminal action (State ex rel. v. Holtcamp, 235 Mo. 232), and that it is an adversary, and not an *ex parte* proceeding. [Hunt v. Searcy, 167 Mo. 158.] But in our view the rule and the controlling reasons therefor are in no wise affected by these holdings.

We conclude that when the probate court has once acquired jurisdiction of an inquiry under our statutes touching the sanity of any person, such inquest can not be dismissed by the petitioner, except with the consent of the probate court acting in his discretion for the best interests of the public and the person whose sanity is under inquiry. And that subject to the discretion of the court in the above behalves, the only effect of petitioner's request for leave to dismiss would be to relieve him absolutely from the liability to pay such costs as might thereafter accrue in the proceeding.

It results and we hold that the action of the judge of the probate court of Jackson county was proper, and that the writ of *certiorari* issued herein should be quashed. It is so ordered. All concur.