REYNOLDS *et al. v.* REYNOLDS *et al.*

(*Nashville*, December Term, 1943.)

Opinion filed February 5, 1944.

WALKER & HOOKER, E. J. WALSH, and WALKER CASEY, all of Nashville, for plaintiffs in error.

BASS, BERRY & SIMS and ALBERT WILLIAMS, all of Nashville, for defendants in error.

MR. JUSTICE NEIL delivered the opinion of the Court.

This suit has its origin in a proceeding in the County Court of Davidson County in which H. Stone Reynolds by petition sought to have Mrs. Mattie Altman adjudged a lunatic. A brief review of the relationship of the parties, and the reasons which appear to have prompted the lunacy proceeding, is necessary to a clear understanding of the questions raised on this appeal.

Mrs. Mattie Altman is the widow of the late Dr. J. T. Altman, who left her a considerable estate at his death consisting of both real and personal property. They had no children. Some years prior to the death of Dr. Altman, a son of Mrs. Altman's niece came to live with them. He was the son of the defendant H. Stone Reynolds. It appears that he was named for Dr. Altman and they were extremely fond of him. Following the death of Dr. Altman, Mrs. Altman sent him to a preparatory school and later to Vanderbilt University, her desire being to prepare him for the medical profession. It appears from the record that Altman Reynolds cooperated with and assisted Mrs. Altman in the management of her property. In 1940 she turned over to him a substantial part of her securities and deeded to him her real estate. He in turn agreed to make proper provision for her. In June, 1941, he delivered to the Third National Bank of Nashville all of the securities except about $3,000 which he delivered to his father, Stone Reynolds. These securities, amounting to approximately $29,000, were placed in trust with the bank as trustee, to be held for the benefit of Mrs. Altman. He executed a written trust agreement

authorizing the trustee, Third National Bank, to use the funds for Mrs. Altman's benefit during her lifetime and for himself. Following this trust agreement, the trustee paid H. Stone Reynolds $290 per month to be expended for the maintenance of Mrs. Altman. In addition to this monthly allowance she had the free use of the home place as a residence, although in 1942 she deeded it along with other property to Altman Reynolds. In September, 1941, young Reynolds was drafted into the Army. In November of the same year he married Helen Gilbert Reynolds and on August 14, 1942, he was killed in an airplane accident. Prior to his death he executed a will in which he named his wife as the sole beneficiary. We think it fairly appears from the record that H. Stone Reynolds approved the trust agreement made by his son, for the reason, if no other, that he acted as the agent of the trustee in accepting the monthly payments of $290 and spending it for the benefit of Mrs. Altman. It was following the death of his son that H. Stone Reynolds filed his petition in the County Court to have Mrs. Altman declared a lunatic and for the appointment of a guardian. In his petition he alleged that she was, prior to and at the time she conveyed her property to Altman Reynolds, a person of unsound mind and incapable of transacting any business, and that Altman Reynolds had overreached her in procuring the aforesaid conveyances. Pursuant to the filing of this petition, the Court ordered an inquisition of lunacy. Thereupon, and during the hearing to determine if Mrs. Altman was of unsound mind, Helen Gilbert Reynolds and Third National Bank, Trustee, appeared by counsel and asked the Court for leave to intervene and contest the proceedings. This was denied. They then asked permission to participate in the hearing

so that "they might point out errors and protect their rights." At the conclusion of all the evidence counsel renewed their application to be heard and were again denied. At the conclusion of the hearing the jury returned its verdict finding Mrs. Altman to be of unsound mind and that her insanity antedated the conveyance of her property to Altman Reynolds. Thereupon Mrs. Helen Gilbert Reynolds, as widow and executrix of the will of her husband, and the Third National Bank, Trustee, etc., made application to the Court "to file a petition in the lunacy proceeding and have said petition made a part of the record of the case," which was denied. The County Judge entered an order confirming the verdict of the jury and appointed the American National Bank as guardian for Mrs. Altman.

The above named petitioners, hereafter referred to as plaintiffs, filed their petition addressed to the Judge of the County Court and averred, in addition to the above recited facts attending the lunacy trial, that said trial "was irregular, contrary to the forms of law, and void; that the judgment of the Court is void, and that the letters of guardianship, being based upon an erroneous and void proceeding, are void and should be revoked." It is further alleged, "Petitioners desire to introduce proof to show that Mrs. Altman was of sound mind when she conveyed the property in question, but were not permitted by the Court to do so," and furthermore they were not allowed an "appeal from the ruling of the Court, although they sought to do so." The petition directly challenges the validity of the lunacy proceedings upon the following grounds: (1) The jury trying the case was not composed of freeholders as required by the statute; (2) no guardian *ad litem* was appointed to represent Mrs.

Altman; (3) that she was not examined as required by law; (4) that she was not represented by any attorney of her selection or her friends ;. (5) that during the trial the deputy clerk who presided handed the jury a written memorandum of what their verdict should be; (6) that the ''finding of the jury was. beyond its powers and void; also because it constituted an *ex parte* finding without permitting the present owners of the property to be present or to become a party to the proceeding.'' (7) that since the estate of the. alleged lunatic exceeded $500, it was the duty of the Court to try the case in accordance with similar proceedings in the Chancery Court which was not done. The prayer of the petition is that (1) the entire lunacy proceeding be declared void; (2) that the judgment of the Court adjudging Mrs. Altman insane be declared void.; (3) that any reference by the jury, and in the final decree, to any property alienated by Mrs. Altman while insane, and any reference to ''the date of her insanity'' be declared null and void; (4) that the letters of guardianship be ''rescinded, revoked, and for nothing held.''

A demurrer was filed to the petition by H. Stone Reynolds and American National Bank, Guardian, upon the following grounds: (1) The Court is without jurisdiction to entertain the petition or grant the relief sought; (2) that the Court is without jurisdiction to entertain it as a bill of review; (3) that the petitioners do not occupy such relationship to Mrs. Altman as would entitle them to file the petition; (4) the property rights of petitioners are not involved or affected by the lunacy proceedings; (5) the verdict of the jury finding Mrs. Altman of unsound mind for a definite period does not involve the title to property, nor affect property rights; that such a finding

of the jury of inquisition "merely creates a presumption —a rule of evidence;" (6) that the petition is not the "proper remedy or proceeding for the correction of the alleged errors;" (7) that the petition does not allege that Mrs. Altman was of sound mind; (8) that no notice was necessary to anyone except the defendant herself; (9) that petitioners are not privileged to become parties; (10) that the lunacy proceeding was entirely regular, that Mrs. Altman was properly represented, and the Court will treat the record in said proceeding as a part of the case; (11) that the Court had jurisdiction of the subject matter and the person in said proceeding; (12) that the allegations in the petition as to motives and conduct of H. Stone Reynolds are immaterial. Other grounds of the demurrer are based upon the record of the lunacy proceeding and are not important in passing upon the questions before us.

"The trial court sustained the demurrer and granted an appeal to the Circuit Court, the entire record in the lunacy proceeding being certified and filed in the case. When the transcript of the lunacy proceedings, including this petition, was filed in the Circuit Court, the petitioners moved the Court "to strike from the record the transcript in the separate and independent cause of H. Stone Reynolds v. Mrs. Mattie Altman," which motion was overruled by the Court and disallowed, to which action of the Court petitioner prayed an appeal to the next term of the Court of Appeals, which was disallowed. Thereupon the case came on to be heard before the Circuit Judge on motion of petitioners Helen Gilbert Reynolds and Third National Bank to dispose of defendants' demurrer to their petition. The Court sustained the demurrer and affirmed the action of the County Court Judge.

An appeal was prayed and granted to the Court of Appeals, which Court transferred the case to this Court. Assignments of error were seasonably filed by appellants. We think it is unnecessary to here copy the various assignments or that they should be separately considered. The determinative questions are shown by the petition and the demurrer. It is petitioners' contention that this is an independent suit, separate and apart from the case in which the jury found Mrs. Altman insane; whereas, the demurrants contend that it is a part of the original case. Pretermitting this question we think the trial court was correct in holding that petitioners did not have such an interest as entitled them to intervene in the lunacy case or participate in the trial. This is the chief assignment of error and is the crux of the case. If they had the right to intervene, the judgment of the trial court should be set aside; otherwise, it is valid.

It is earnestly contended by counsel for petitioners that if the verdict of the jury is allowed to stand and the inquisition trial held to be valid, then they will be greatly prejudiced thereby for the reason that "defendants are preparing to institute a suit against complainants, seeking to obtain title to the securities and property which are now being held and owned by the Third National Bank in Nashville in trust for Mrs. Altman, and that such proposed suit is and will be based upon the above described void judgment." We think the foregoing averment is a mere conclusion of the pleader and is based upon the assumption that the Chancery Court would hold that the judgment would be conclusive of the issue of Mrs. Altman's insanity. At most, it would be only *prima facie* evidence of the fact. It does not, however, arise to that dignity because appellants alleged in their sworn petition

that they desired to participate in the hearing "so that they might point out errors and protect their rights," which was denied by the Court.

██ ██ We think the verdict of the jury and the judgment of the County Court in an inquisition of lunacy does not in any way affect the title to property. In 28 Am. Jur., section 11, p. 662, it is said:

"An inquisition of lunacy cannot determine any issue other than the status of the alleged lunatic. *It cannot settle questions pertaining to property rights.*" (Italics ours.)

What is the real purpose of an inquisition of lunacy? It is to secure the commitment of the alleged lunatic to an institution, when it is not safe for such person to be at large, or to obtain the appointment of a guardian of his person, and/or his property to preserve it from waste. The inquisition is governed by the statutes of the several states. In Tennessee our statute confers exclusive jurisdiction upon the County Court in cases where the value of the property of the lunatic is under five hundred dollars. The Chancery Court is given concurrent jurisdiction where its value exceeds that amount. Code, section 9613. Section 9614 of the Code, which provides for the holding of an inquisition by the County Court, clearly states that the jury of freeholders are to "ascertain, by inquisition, the idiocy or lunacy, and the property and estate of the idiot or lunatic," etc. Section 9615 sets out the form of the writ, which is addressed to the sheriff, commanding him to summon twelve freeholders who upon oath are to inquire whether or not the person proceeded against is "an idiot or lunatic, or is otherwise of unsound mind, so that he has not capacity sufficient for the government of himself and his property, and, if so,

from what time, after what manner, and how;" etc. The writ is very broad and comprehensive. It need not be here quoted in its entirety. We think the provision of the foregoing statutes conferring authority upon the court and jury to ascertain the time, *or from what time,* the alleged lunatic was of unsound mind is directory. The writ merely indicates the scope of the inquiry that is to be made. The trial court is anxious to know the status of the accused, i. e., whether his incapacity is of such duration as to justify the proceeding. The reference to the amount of his property is to enable the court to determine the question of guardianship.

■■ Considering further the question that the trial court, upon an inquisition of lunacy, is without authority to enter a judgment affecting title to property, we hold that there is no issue before the court other than the mental status of the person named in the petition. All other issues are incidental. In *Hughes* v. *Jones,* 116 N. Y., 67, 22 N. E., 446, 5 L. R. A., 632, 15 Am. St. Rep., 386, it was held that: "In an inquisition of lunacy, a finding by the jury that the person alleged to be insane, had been of unsound mind for several years is incidental, and, not conclusive as to the validity of a deed executed within that time." It was further decided by the Court that "the title to land was not involved in the proceeding under consideration, and that a commission to inquire as to the mental status of an alleged lunatic has no power to settle any such question." The Court once having acquired jurisdiction of the person of the alleged lunatic, the proceeding cannot be dismissed without the consent of the court because the public has an interest as well as the accused. *State ex rel. Paxton* v. *Guinotte,* 257 Mo. 1, 165 S. W., 718, 721, 51 L. R. A. (N. S.), 1191, Ann. Cas.

216

1915D, 658. In that case the Court quoted with approval the following excerpt from *Hughes* v. *Jones, supra*:

"The primary object of the proceeding is not to benefit any particular individual, but to see whether the fact of mental incapacity exists, so that the public, through the courts, can take control."

See also *Hamilton* v. *Traber*, 78 Md., 26, 27 A., 229, 44 Am. St. Rep., 258.

Since the title to the securities held by the Third National Bank as trustee is not here involved (and the same is true as to the right of Helen Gilbert Reynolds to property under the alleged will of Altman Reynolds), except indirectly and remotely, it follows that they are strangers to this proceeding and have no right to intervene.

We think that other assignments of error are subordinate to the one herein considered. It is conclusive of the case. The several assignments are accordingly overruled and the judgment of the trial court affirmed.

### On Petition to Rehear.

The petitioners, Helen Gilbert Reynolds and the Third National Bank, Trustee, have filed their petition to rehear, complaining of a failure by the Court to respond to the following assignment of error: "The Circuit Court erred in refusing to strike from the record in this case the transcript of the evidence and pleadings in the lunacy inquisition, as this proceeding is a separate suit from the lunacy inquisition and is between different parties."

We think it is clear from the record that the County Judge and the Circuit Judge both treated the petition as a proceeding to set aside the judgment in the lunacy case and not as an independent suit. The petition was

filed within the time allowed by law for making a motion for a new trial and to set aside the judgment and decree of the court. Passing to the question made in the petition that this is "a suit entirely separate from the lunacy proceeding," it is insisted by petitioners, "The trial court did not hold against these complainants upon the ground that they did not have such an interest as entitled them to intervene in the lunacy proceeding. The trial court—which was the Circuit Court—merely sustained the defendants' demurrer without setting out the reasons therefor." The record fails to show anything other than that the demurrer was sustained. We must conclude therefore that the holding of the Court was that some one or more or all grounds of the demurrer (twenty-five in number) were well taken and the petition was dismissed. The demurrer challenged (1) the jurisdiction of the court to entertain the suit, (2) "that petitioners do not occupy such relationship to Mrs. Altman as would entitle them to file the petition," and (3) "the property rights of petitioners are not involved or affected by the lunacy proceedings." It thus clearly appears that petitioners are mistaken in the view that the Circuit Judge did not hold against them on the ground that they were not parties in interest. In sustaining the demurrer he expressly held that they did not have sufficient interest to entitle them to intervene and that their property rights were not involved.

■ We think it is unnecessary that we consider the question of the jurisdiction of the County Court to entertain this petition as an independent suit. If petitioners did not have such interest as entitled them to intervene and participate in the lunacy trial, it follows, for the same reason, they have no right to file an independent suit challenging the judgment and decree of the Court. We

are firmly convinced that the trial court was not in error in sustaining the demurrer, based upon the authorities cited in the original opinion. The case of *Louisville & N. R. Co.* v. *Herb*, 125 Tenn., 408, 143 S. W., 1138, deals with a question of jurisdiction and since we have pretermitted that question we will not undertake to distinguish it from the instant case.

The only interest petitioners have is remote and indirect. It most assuredly cannot be called a present interest. Petitioners express a fear that the verdict of the jury, finding that Mrs. Altman was of unsound mind prior to the execution by her of deeds to Altman Reynolds, will be invoked as *prima facie* evidence of insanity in a suit hereafter to be instituted by H. Stone Reynolds to have said deeds declared void and of no effect; in other words, that the decree in question might result in shifting the burden of proof in such a case from complainants to the petitioners. If the purpose of the petition now before us was to have the lunacy judgment set aside to avoid this possible embarrassment, it cannot be maintained for the reason (1) it does not involve a present interest, and (2) is too remote to be made the basis of a cause of action. Moreover, the verdict of the jury finding Mrs. Altman to be of unsound mind prior to the institution of the lunacy proceedings does not involve or affect any future interest of petitioners. The form of the writ of inquisition, as found in Code, section 9615, is as follows:

"State of Tennessee,
"——— County.

"To the sheriff of ——— county — Greeting:

"You are hereby commanded to inquire, by the oath of twelve freeholders, summoned by yourself, whether ———, of ———, in the county of ———, is an idiot or

lunatic, or is otherwise of unsound mind, so that he has not capacity sufficient for the government of himself and his property, and, if so, from what time, after what manner, and how; and if the said ————, being in the same condition, hath alienated any lands or tenements or not, and, if so, what lands and what tenements, to what person or persons, where, when, after what manner, and how; and what lands and tenements, goods and chattels, yet remain to him; how much they are worth by the year; whether he has a wife and children, and their names and ages. And you are further commanded that at certain days and places, appointed by yourself, you diligently make inquisition in the premises; and the same, distinctly and plainly made, return into the county court of said county at its next session, together with this writ.''

The authority conferred under the foregoing section is purely directory, containing as it does a direction for a broad and searching inquiry as to the mental status of the alleged lunatic, as well as the extent of his or her property, and who may have possession of it. The authority would exist independent of the statute. The jury must hear testimony as to the condition of mind of the lunatic prior to the inquisition to determine that the person proceeded against is not suffering from a mere temporary mental aberration but that it is of some duration and justifies the appointment of a guardian.

In the instant case there was no issue before the jury as to whether Mrs. Altman could or could not make a valid contract on some particular day prior to the institution of the lunacy proceedings. For us to express a definite opinion as to what effect the Chancellor should give the decree in the lunacy case in a suit yet to be instituted and tried by him would be of doubtful propriety.

The petition is denied.