# ALTMAN v. THIRD NAT. BANK IN NASHVILLE et al.—203 S. W. (2d) 701.

Middle Section.   April 26, 1947.

Petition for Certiorari denied by Supreme Court, June 26, 1947.

82

Williams, Cummings & West and Bass, Berry & Sims, all of Nashville, for complainant.

John J. Hooker, Walker Casey and E. J. Walsh, all of Nashville, for defendants.

FELTS, J.   Mrs. Altman, a person of unsound mind suing by the American National Bank as her next friend and guardian, filed the bill herein against the Third National Bank in Nashville and Helen Gilbert Reynolds to recover real and personal property described in the bill and to have an accounting by the Third National Bank, which claimed the legal title to said property under certain trust instruments.

Complainant was an old lady, about 79, and the widow of Dr. Altman, who had died in 1926. She had no children and her nearest relative was her niece, Mrs. Berta Bedford Reynolds. She and Dr. Altman were very fond of Altman Reynolds, a son of Mrs. Berta Bedford Reynolds.

They undertook to educate him and he lived a large part of the time in their home. After Dr. Altman's death Altman Reynolds continued to live in the home of Mrs. Altman. She trusted him and in the latter years of her life he took charge of her property.

On May 4, 1940, she deeded him all her real estate, including her home, which consisted of four parcels in Nashville. On May 14, 1940, she turned over to him the personalty in her lock box, consisting of stocks, bonds, and cash, of considerable value.

On June 9, 1941, he and the Third National Bank in Nashville, Trustee, executed a trust agreement under which he delivered this personalty to the Bank as Trustee to hold and manage the property according to the terms of the trust. It provided that the Trustee would pay a monthly sum, to be agreed on by the parties and H. Stone Reynolds, father of Altman Reynolds, for the living expenses of Mrs. Altman during her lifetime, and would pay to Altman Reynolds a monthly sum to be agreed upon. At Mrs. Altman's death the Trustee was to pay the balance of the fund to Altman Reynolds.

On March 21, 1942, the Trustee and Altman Reynolds made a supplemental trust agreement, reciting that he had married since making the original trust agreement, and agreeing that the $100 per month being paid him under the former agreement would, in case of his death, be paid to his wife Helen Gilbert Reynolds. Soon thereafter he was inducted into the Army and was killed in an airplane accident August 17, 1942. He left a will giving all his property to his wife Helen Gilbert Reynolds.

Upon a petition of H. Stone Reynolds the County Court of Davidson County, by decree entered October 13, 1942, adjudged that Mrs. Altman was a person of unsound mind and had been of unsound mind since 1937; and on

October 14, 1942, the County Court appointed the American National Bank as her guardian. On October 17, 1942, Helen Gilbert Reynolds executed a deed of the real estate to the Third National Bank, Trustee, to hold the property in trust for the benefit of Mrs. Altman for life with remainder to Helen Gilbert Reynolds.

The present bill was filed June 26, 1943. It set out the matters above stated and charged that Altman Reynolds had obtained the property of Mrs. Altman by undue influence and breach of the confidential relation between them, and that she was insane and legally incapable of making any transfer of her property.

The Third National Bank filed its answer admitting the transfers of the property to it under trusts and denying that Mrs. Altman was incapacitated or that the transfers were invalid. This answer also averred that the decree of the County Court adjudging her to be of unsound mind and appointing the American National Bank as her guardian was void for a number of reasons.

Helen Gilbert Reynolds filed an answer and cross-bill denying that Mrs. Altman was of unsound mind or that the transfers were invalid. This answer and cross-bill charged that H. Stone Reynolds had approved the transfers and the trusts; but that since the death of Altman Reynolds he had entered into a scheme to defraud Helen Gilbert Reynolds of the property; and that pursuant to such scheme he had procured the County Court to adjudicate that Mrs. Altman was of unsound mind and to appoint the American National Bank as her guardian. It was also alleged that the County Court decree was then under a direct attack in another proceeding to have the decree declared void. The only relief prayed in the cross-bill was an injunction to stay further proceedings in the present cause to await the outcome of that proceeding.

In the meantime Helen Gilbert Reynolds and the Third National Bank, Trustee, filed a petition in the County Court attacking the lunacy decree and the appointment of the guardian. That case was finally determined by the Supreme Court on February 5, 1944. The Court dismissed their petition, holding they had no interest to attack the decree. See the Opinion of the Supreme Court in Reynolds v. Reynolds, 181 Tenn. 206, 180 S. W. (2d) 894.

On July 22, 1946, and subsequent days the present suit was tried before the Chancellor and a jury, defendants having demanded a jury. These two issues were submitted to the jury: (1) "Whether Mrs. Altman was of unsound mind on or about May 4, 1940, May 14, 1940, and June 10, 1940" (the dates of the transfers), (2) "Whether Altman Reynolds overreached or unduly influenced Mrs. Altman in the making of those transfers." The jury were instructed that if they found Mrs. Altman was of unsound mind on these dates they need not answer as to the second issue. They found she was of unsound mind on each of the dates and, accordingly, did not respond to the second issue.

Defendants moved to set aside the verdict and for a new trial upon numerous grounds. The Chancellor overruled the motion, approved the verdict, and entered a decree adjudging that Mrs. Altman was of unsound mind, that the transfers were void, and that complainant recover the property of defendants; and he referred the cause to the Master for an accounting. Defendants appealed and have assigned a number of errors.

Through assignment No. 1 defendants insist that the Court should have continued the present case because it was shown that a direct attack is being made in the County Court upon the decree which adjudged Mrs. Altman to be of unsound mind and appointed "complainant" as

her guardian. It is said that this continuance should have been granted because, in the event the attack is successful, there would be no guardian for Mrs. Altman and this suit would be without a complainant and would fail.

We think there is no merit in this assignment. This suit had been pending more than three years. It had doubtless been delayed by reason of the first direct attack by defendants upon the County Court decree, which attack, as we have seen, was unsuccessful. If this second attack should prove successful, the consequences suggested would not follow. Mrs. Altman was complainant herself, the guardian merely acting as next friend. See Stewart v. Sims, 112 Tenn. 296, 79 S. W. 385. She would still remain the complainant and would still have the right to prosecute this suit by another next friend even though the appointment of her present guardian turned out to be invalid.

Defendants' assignment No. 2 complains that the Chancellor should not have set the case for trial when it was not at issue as to H. Stone Reynolds. It appears that a motion had been made to strike so much of the cross-bill as related to H. Stone Reynolds, and the motion had been taken under advisement by the Chancellor. He sustained this motion on the morning the case was set for trial and before the trial began. We see no impropriety in this action, because H. Stone Reynolds was in no wise related to Mrs. Altman, had no present or prospective interest in the property, and the cross-bill did not allege any cause or ask any relief against him.

Defendants' assignment No. 3 complains of the action of the Chancellor in allowing the bill to be amended, just before the beginning of the trial, so as to sue the Third National Bank in its capacity as "Trustee." The point was made on the day the trial started that the bank

had not been sued as Trustee. The Chancellor allowed complainant to amend, and ordered that the bank's answer should also stand as its answer as Trustee.

We can see no error in this. We think the bank was already before the Court as a defendant in its capacity as Trustee. While the caption of the bill did not describe the bank as "Trustee," in its body it alleged a cause against the bank as Trustee. The capacity in which one is sued is to be determined not alone from the caption but also from the allegations in the bill; and where the bill states a cause of action against a defendant in a representative capacity, it is sufficient to charge him as such though the caption fails so to describe him. Rose v. Third National Bank, 27 Tenn. App. 553, 564, 565, 183 S. W. (2d) 1, 5, 6.

Defendants' fourth assignment complains of the action of the Chancellor in dismissing the cross-bill and the supplemental cross-bill of Helen Reynolds and denying the prayer for an injunction. In support of this assignment it is said that the cross-bill and the supplemental cross-bill (filed July 26, 1946, while the trial was in progress) alleged facts which showed that the lunacy proceedings were void and that a direct attack is being made upon such proceedings. As said above, this was no ground for a continuance, the only relief sought by the cross-bill. If that attack succeeds, it would neither abate nor bar this suit.

Assignments No. 5 and 6 complain that the Chancellor erred in allowing the County Court decree to be read in evidence before the jury. We think this was not error. The adjudication of insanity was competent and admissible as evidence. That such an adjudication is admissible was settled in Bond v. State, 129 Tenn. 75, 83-85, 165 S. W. 229; and that decision has ever since been fol-

lowed in this State. Pritchett v. Thomas Plater & Co., 144 Tenn. 406, 232 S. W. 961; Brown v. Eckhardt, 23 Tenn. App. 217, 129 S. W. (2d) 1122; Sweeney v. Carter, 24 Tenn. App. 6, 137 S. W. (2d) 892. In Pritchett v. Thomas Plater & Co., supra, the Court said: ''This judgment, according to the rule announced by this court in Bond v. State, 129 Tenn. 75, 165 S. W. 229, which we think is in accord with the weight of authority, is conclusive evidence of Mr. Pritchett's insanity at the date of the judgment, and prima facie evidence of his insanity during the intervening period from October 25, 1910, and is, therefore, prima facie evidence of his insanity in June, 1911, when the sale in question was made.'' 144 Tenn. 423, 232 S. W. 966.

It is argued that the County Court had no authority to adjudge that Mrs. Altman's unsoundness of mind dated back to 1937, or to adjudge that she was of unsound mind at any time prior to the date of the decree, October 13, 1942. It is said that, since her estate exceeded $500 in value, and the jurisdictions of the County Court and of the Chancery Court were concurrent, Code, section 10220, required the County Court to proceed according to the rules laid down for a lunacy proceeding in the Chancery Court; and that instead of following Code, section 9615, the County Court should have followed Code, sections 9624-9630, which contained no provision for backdating an adjudication of lunacy.

No authority is cited to support this argument. We cannot follow it. Code, section 9615, is a form of the writ which directs the jury to inquire whether the accused is of unsound mind and ''if so, from what time.'' We find nothing repugnant between this section and sections 9624-9630. The writ under these sections might well have the

same form as that prescribed in section 9615 and the Chancery decree follow such form.

■ Assignments 7 and 8 complain of the admission in evidence of a letter written by Altman Reynolds December 30, 1940, as a part of his answers to his Selective Service questionnaire, in which letter he made, among others, the following statement: "Mrs. Altman is now 79 years old, or perhaps more, and is breaking down fast. In 1939 her aged condition brought on old age forgetfulness, senility and childishness. She became no longer capable of handling her own affairs, and, having never been used to anyone else except myself, she would not allow anyone except me to take charge of her business and household affairs." (Ex. 1 to Testimony of Margaret Baldwin, sent up.)

This letter was produced in Court by the witness Miss Baldwin under a subpoena. When the Chancellor overruled defendants' objections and ruled that this statement was admissible, defendants' counsel, still insisting upon their objections, stated that if any part of the letter was to be read to the jury all of it should be read; and the whole of it was read. The Chancellor admitted this statement as a declaration or admission against interest by Altman Reynolds, through whom defendants claimed title.

First, it is argued that the contents of this letter were not against the interest of Altman Reynolds but were in his interest, to keep him from being drafted, and that it was hearsay and inadmissible. We think the fact that he had a motive or reason for making the statement, such as desiring to be deferred or exempted, does not change or alter the character of his statement. Whatever his motives, the statement was nonetheless an admission or declaration against his title. If he were now a defendant in-

stead of those who claim under him, we think there could be no doubt that this statement would be admissible against him. Such being the case, it is equally admissible against his privies or those claiming title under him. Mulholland v. Ellitson, 41 Tenn. 307, 78 Am. Dec. 495; Dunn v. Eaton, 92 Tenn. 743, 23 S. W. 163; Tom Love Co. v. Maryland Cas. Co., 166 Tenn. 275, 61 S. W. (2d) 672; 4 Wigmore on Evidence, secs. 1080-1082.

■ It is urged, however, that this letter was made confidential by the regulations of the Director of Selective Service, because it pertained to his dependency status. It is true these regulations (Tr. p. 97) do make the information in a registrant's file as to his dependency status confidential for some purposes. But they do not make such information confidential against any and every sort of disclosure. For instance, they provide such information shall not be confidential but may be examined by:

"(3) United States Attorneys and their duly authorized representatives, including agents of the Federal Bureau of Investigation.

"(4) Any other agency, official, or employee, or class or group of officials or employees, of the United States or any State or subdivision thereof, but only when and to the extent specifically authorized in writing by the State Director of Selective Service or the Director of Selective Service."

We find no provision in these regulations which makes the information of a registrant's file confidential against disclosure by a subpoena of a court of competent jurisdiction. In the absence of such an express provision we think none is to be implied. See 8 Wigmore on Evidence, 3rd Ed., secs. 2377, 2379, especially page 801.

Defendants rely on Federal Life Ins. Co. v. Holod, D. C., 30 F. Supp. 713, and Harris v. Walsh, 51 App. D. C.

167, 277 F. 569. These cases, however, are not in point. They arose under World War I regulations, which not only made the information confidential but expressly provided that it "shall not, without consent of the registrant, be produced or published in response to any subpoena or summons of any court."

Assignments 9 and 10 complain of the action of the Chancellor in striking out parts of the answer and cross-bill of Helen Reynolds charging that the County Court decree was void and charging a scheme of fraud upon the part of H. Stone Reynolds. Assignment No. 11 complains of the action of the Chancellor in striking out parts of the answer of the Third National Bank and parts of the answer of Helen Gilbert Reynolds.

It appears that the purpose of all these allegations was to lay ground for an injunction to stay this cause to await the outcome of the proceeding by way of the direct attack in the law courts upon the County Court decree. It appears the Chancellor so understood the matter. These assignments raise essentially the same question as that presented by assignment No. 1. We think what has been said in response to that assignment is also sufficient response to these assignments.

All of the assignments of error are overruled.

■ It appears that pending this appeal Mrs. Altman died. At the hearing her death was suggested and admitted. It was suggested that counsel prepare a proper order of revivor. It seems, however, that they have been unable to agree on such an order. It appears in the record that the next of kin of Mrs. Altman is Mrs. Berta Bedford Reynolds, who is herself a person of unsound mind. Counsel for complainant have submitted an order of revivor to revive the cause in the name of the American National Bank, which is stated to be also the guardian of Mrs.

Berta Bedford Reynolds. While counsel for defendants do not appear to have approved this order of revivor, they have made no objection to it. It appears to be a proper order and it will be entered reviving the cause.

A decree will be entered affirming the decree of the Chancellor and remanding the cause for further proceedings not inconsistent with this opinion. The costs of the appeal in error are adjudged against defendants and the sureties on their appeal bond.

Howell and Hickerson, JJ., concur.