Opinion of the court, by
Judge Burnet :
At the trial of this cause, it was proposed, on the part of the plaintiffs, to prove that they were children of John Waldsmith, and heirs of Christian Waldsmith, deceased — that the defendants were the administrators of C. Waldsmith, and that on settlement of their accounts before the court of common pleas, a large sum was found in their hands belonging to the heirs. This testimony was rejected, and a judgment of nonsuit entered.
On a motion to open the nonsuit; and grant a new trial, the question was, whether the court erred in overruling the testimony. In examining this case, it is necessary to look at the declaration. The defendants are charged as administrators of C. Waldsmith, deceased; the plaintiffs are described as “children of John Wald-smith, deceased, and *heirs of C. Waldsmith, deceased.” It is averred, “that the said defendants, administrators of C. Wald-smith, deceased, accounted with the judges of the court of common *146 pleas, of and concerning the goods and chattels, moneys and effects, which were of said Christian at the time of his death, and which, before that time, had come to their hands to be administered; and, upon such accounting, the said defendants were then and there found to be in arrear, and indebted to the said plaintiffs in the sum of two thousand three hundred and fifty-eight dollars and seventy-four cents, and being so found in arrear and indebted, they, the said defendants, in consideration thereof, undertook and promise,” etc.
The declaration also contains the common money counts, in which the defendants were not named as administrators.
It was contended by the defendants at the trial, that the judgment against them, on this declaration, must be de bonis testatoris, while the facts charged, if they rendered them liable at all, made them so in their individual capacity.
The plaintiffs insist, first, that the judgment must be da bonis propriis; and secondly, that the facts charged, supported by the proof they offered,, are sufficient to entitle them to such a judgment.
These propositions must be separately considered. There appears to be some discrepancy between the authorities relating to the first point, which, on a superficial view, would seem to create a doubt.
It is true, as a general proposition, that in actions against executors or administrators, the judgment must be de bonis testatoris, and'that it is necessary to resort to a sci. fa. in order to charge them with a personal liability; but this is to be understood as applying to cases in which they are liable only in that capacity, and not to those in which there is an individual liability. If the action is founded on a promise, made by the testator or intestate, in his life, the defendant must' be sued in his representative character; he may plead plene administravit, and the judgment must be de bonis testatoris-, but, if the plaintiff rely on a promise by the executor, after the death of the testator, it is not necessary to name the defendant as executer, yet this may be done; they may be named as administrators by way of description, or for the purpose of showing the circumstances of the transaction, *and the origin of the liability; but the defendants can not plead plena administravit, and the judgment should be de bonis propriis. In such cases, the plaintiff is at liberty to describe the defendants as executors or not, *147 at his election. The form of the judgment is not necessarily con-, trolled by that description, where it sufficiently appears that it is given merely as a descriptio persones, and not as an indication of the capacity in which the liability attaches. If the declaration presents a claim, to which the defendent is liable in his representative capacity only, as on an obligation executed by the testator, he must be sued as executor, and the judgment must be de bonis testatoris; but if it present a demand, which originated from the acts of the defendant, in his capacity of executor, but for which he has become individually liable, as if he should settle a debt due from the estate, and give his own note in the character of an executor, he may be described in the writ and declaration as executor, or that description may be omitted, and in either case the judgment would be de bonispropriis. So in the case before us; the property of the intestate was received and disposed of by the defendants, as administrators; the money claimed in this suit was obtained, and is now held by virtue of their power as administrators, but having closed the estate, and settled their accounts, by which thé net amount is ascertained, they hold that amount for the use of the heirs, and are liable in their individual capacity. Their liability, however, does not depend on the simple fact that they are administrators, but on the subsequent transactions which have brought the estate into their hands.
As regards creditors, the right of action against the intestate is converted, by operation of law, into' a right against the administrators. They are liable to the creditor, because the intestate was so liable, and as the remedy must pursue the right, it must charge them in their representative capacity. But not so in the case of heirs; no right of action vested in them against their ancestor, and consequently none has been transferred against the repre. sentative. Their right had no existence till after his death, and it was then contingent, depending on the result of' the settlement *of the estate. It was, in fact, the right of' the ancestor, transferred by operation of law, and not a right against the ancestor.
The property was received, and converted into money for their use. The defendants became liable as agents, in the same character in which they would have been liable to the intestate, had they disposed of the property in his life, and by his authority. In other words, they are under an individual liability, on which an *148 action could be sustained against them in that character. The words “ as administrators,” in the writ and declaration, may be considered as descriptive of the persons sued, and not of the character in which they are sued, or they may be treated as surplusage. No person can read the declaration, and notice the manner in which the liability of the defendants arose, without discovering at once the character in which it is intended to charge them. As administrators of the deceased, they received and disposed of the property, paid the debts, and settled with the court. These transactions were authorized and required by the letters of administration ; they form a part of the plaintiffs’ title, and it was proper to set them out in the declaration, but as they show an individual liability, the judgment must be de bonis propriis. This conclusion seems to follow from the authorities on the subject. The case of Wallis v. Lewis, Ld. Raym. 1215, was by an executrix, on a promise made to herself, as executrix. On a motion in arrest of judgment, the court decided that the declaration being grounded on a promise to the executrix herself, the naming her executrix was but surplusage. This point, however, was ruled differently in Elwee’s executrix v. Mocater, in the same book, page 865, but it was decided in the same way, in Nicholas v. Killigrew, 1 Ld. Raym. 436, which was indebitatus assumpsit, by an administrator to recover money paid to a third person, after the death of the intestate, for the use of the plaintiff as administrator. In Jenkins and wife v. Plume, 1 Salk. 207, and 6 Mod. 92, which was assumpsit by executors for money had and received by the defendants, to their use, as executors, the action was held to lie, and that the naming themselves executors was only to deduce their right, and *set it forth ah origine. Marsh v. Yellowly, 2 Stra. 1106, was decided on the principle, that on a promise made, or a wrong done to the executor himself, he may sustain an action in his own name, or as executor, and it was held that in either case he was liable for cost. In Hooker v. Quilter, Ib. 1271, the declaration contained three counts, as executrix, and one for the use and occupation of the plaintiff’s house. There was judgment by default, which was reversed on error, for, said the court, there being no verdict, they could presume nothing but that the fourth count was, as it appeared, in her own right, which could not be joined with the others. In the final determination of Jenkins and Plume, as reported in 6 Mod. 181, the court says, “ The plaintiff needed not have named himself *149 executor, it being on a contract with himself. His saying that it was to his use, as executor, is true, and therefore no harm, but rather better, for it shows how the right came.” The cases cited from 4 Term, 347, and 2 Bos. & Pul. 424, do not meet the question before us. It was decided in those cases, that counts on promises made, by the testator in his life, could not be joined with counts on promises made by the executor, as such, because they admitted of-different pleas, and different judgments; but it seems to have been understood that separate suits might have been sustained against the executor, on those promises, naming him as executor, and that on the latter, the judgment would have been de bonis propriis, although the defendant was named as executor. The same remark applies to the authority from 2 Saund. 328. The cases there referred to relate to the doctrine of joinder of actions, and were cited for the purpose of showing that money claimed by, or from executors, in different rights, could not be united in the same declaration, which is a question altogether different from the one now under discussion. We should not expect to find the present question determined, in cases of that character, but as far as they have a bearing on it, they seem to support the declaration before us. The author of the note admits, that a count, or an account stated, with an executor, for money due from the testator, may be joined with a count on a promise made ■ by the testator; and though he ^strongly doubts the doctrine in Petrie v. Hannay, 3 D. & E. 659, in which it was laid down that several counts may be joined, for money had and received by the defendant, to the use of the testator, and to the use of the executors as such, yet Buller, Justice, confidently affirms that such was the constant practice. The case of Hooker v. Quilter, before cited, seems to imply the same thing.
In Carter v. Phelps’ administrator, 8 Johns. 440, it was admitted that a count charging an executor as being liable in his own right, on a cause of action arising after the testator’s death, can not be joined with one on a promise made by the testator in his life; but it was decided that a count, on a promise made by an executor or administrator as such in which he is not charged as personally liable, may be joined with a count on a promise made by the intestate, and by a parity of reasoning, a count, on a promise by an executor, in which he is named as executor, but charged as in his own right, may be joined with a count on a promise in which he is not named as executor. In both cases the demand is made in the same right, *150 and the plea and judgment are the same in both. In Myer v. Cole, 2 Johns. 350, the cause of action stated in one count, arose after the death of the testatrix, and the promise was not alleged to have been made by the executors, as such; but the point decided in that case does not arise in the case before us. It is, however, plainly to be inferred, from ,the language of the court, that in an action against executors, for a cause arising after the death of the testator, and for which they are personally liable, they may be named as executors, as a mere descriptio personae, and consequently that the judgment, notwithstanding they are so named, will be de bonis propriis. In Hooker v. Quilter, as reported in 1 Wils., the chief reason against the joinder was, that the court could not say what damages the plaintiff was to have, as administrator, and what in proprio jure. The reason of the decision, therefore, has no application to the present case. It was also stated in that case, that if an executor name himself executor, when he may sue without, as in an action for rent, both in the life of the testator, and after his death, it is but surplusage, and this is the most that can be said in the present case. *It was not necessary to sue the defendants, as administrators, for although their liability arose from their acts as administrators, yet they were responsible in their individual characters, and the naming of them as administrators is merely a descriptio personae. It may be treated as surplusage, or as intended to show the nature and origin of their liability. It can not affect the form of judgment:
The case of Barry v. Rush, 1 Term, 691, cited by plaintiff, does not bear on this case. The point there settled was, that an administrator, by entering into an arbitration bond, admitted assets and could not afterward plead plene administravit. The case of Farr v. Newman, 4 Term, 621, cited by both parties, appears equally inapplicable. The point discussed and decided in that case was, that the goods of a testator, in the hands of his executor, were not liable to bo taken and sold, on an execution, for the private debt of the executor, to the exclusion of judgments for the proper debts of the testator. The same remark applies to the case of Rogers v. Jenkins, 1 Bos. & Pul. 383. The point there settled by Eyre, Chief Justice, was, that if process issue in the name of one plaintiff, and a declaration be filed in the name of him and another, judgment will be set aside for irregularity. In the marginal note to this ease, it is stated that in Canning v. Davis, Yates, Justice, decided that though a *151 plaintiff style himself executor, or give himself any other superfluous description, it will not hurt, for the demand is still the same. Section 16 of the act defining the duties of executors and administrators has also been referred to on the part of the defendants. On a careful examination of that section, the true construction of it will be found to be this, that the judgment of the court against executors, or administrators, in all cases in which it is properly rendered de bonis testatoris, shall only subject the defendants to the amount of assets in their hands unadministered, whatever may have been the form of pleading. It can not, therefore, affect the present question. It contains no direction as to the description of cases in which the judgment shall be de bonis testatoris, although it appears to have been cited for that purpose.
The best view we have been able to take of this subject, ^conducts us to the conclusion that there was no impropriety in describing the defendants as administrators — that that circumstance does not preclude them from taking their judgment de bonispropriis, and that there is nothing incompatible in the different counts contained in the declaration.
The second proposition is, that the facts stated in the declaration, supported by the proof offered at the trial, were sufficient to entitle the plaintiffs to a verdict.
It is a well-settled principle that every declaration must set out a good title. It must show such facts, as, if true, entitle the plaintiff to a judgment. The omission of a material averment can not be supplied by testimony at the trial. The plaintiff’s evidence must correspond with his case — he can not extend it to aid a defective title; and although the evidence offered may present a clear case for the plaintiff, yet, if it be not the same case found in the declaration, the court will reject it, although the consequence may be a nonsuit.
Evidence, being that which ascertains and illustrates the point in issue, must be confined to that point. Without an observance of this rule uncertainty and confusion would ensue. The records of adjudged cases would not show, with any degree of certainty, the grounds on which recoveries were had; nor would it be possible to conduct judicial proceedings with that precision and certainty which is justly ascribed to the science of special pleading, and is so essential to a safe and uniform administration of justice. It can scarcely be necessary to refer to books in support of these principles — they are found everywhere.
*152 The plaintiffs in this case claim as heirs at law to the intestate, and the suit is brought for their distributive share of the personal estate. It is not pretended that any express promise has been made. The action is grounded on the legal liability of the defendants, and the implied undertaking which the law infers from it. The fact that the plaintiffs are children of John Waldsmith, deceased, does not constitute them heirs of C. Waldsmith; nor does it, in connection with the other fact, that the defendants, as administrators, have settled the estate and retain a residuum, show any liability to these plaintiffs, because that fact may *be true, and the plaintiffs be destitute of any right to recover. To show the existence of that right two additional facts are necessary, viz: that they are grandchildren of the intestate, and that the intestate survived their father. It is not stated that John was the son of Christian, nor does it appear which was the survivor. The former of these facts constitutes the foundation of the claim, and the latter is equally important; for if the father survived the grandfather he was the heir; the right vested in him at the death of the intestate — it continued in him till his death, on which it descended to the plaintiffs, who -must claim it as a part of their personal estate, through his executors or his administrators, and not as heirs at law to their grandfather — which would be presupposing that the right, at the death of their father, revested in their deceased grandfather for the purpose of descending to them, which would be an absurdity. As the declaration describes the plaintiffs to be the children of John Waldsmith, it is not enough to add “and heirs of Christian Waldsmith;” that does not follow as a consequence of the fact stated.
The rule that plaintiffs, who claim as heirs, must show how they are heirs, applies in this case, and it is understood that this relates to the declaration as well as the evidence given at the trial.
. If the defendants are liable in this action, it is on the concurrence of a variety of facts, which, taken together, constitute a title in the plaintiffs, but can not be proved unless they are relied on and stated in the declaration. A good title, defectively set out, may be supplied at the trial, but not so where the title itself appears to be defective.
It can not be pretended that a plaintiff who sues as an heir, and simply avers that he is an heir, sets out a good title, and yet this is the amount of the declaration in the present case. Without *153 showing any privity, or liability, or any ground of an implied undertaking on the part of the defendants, it is averred that they accounted with the judges of the court of common pleas, and were found in arrear and indebted to the plaintiffs. Their indebtedness to the plaintiffs, in any amount, depends on the fact of heirship, which is not shown; and the amount of that indebtedness ^depends on the number of heirs, their respective degrees of consanguinity, and the total amount of residuum, ascertained by the settlement, respecting which the declaration is entirely silent. If the plaintiffs be heirs of the intestate, they take per stirpes, and the share to which they have a claim depends on the number of children who survived the intestate, or who might have died before him, leaving issue.
It was proposed to supply all these omissions by proof at the trial, or, in other words, to make out a title before the jury, which was not found in the pleadings. We are of opinion that this could not be done. But there is another inquiry involved in this branch of the case, equally decisive. On what principle of law have the plaintiffs joined in this action? We learn, though not from the pleadings, that they are the grandchildren and a part of the heirs of C. Waldsmith, among whom the administrators are directed by the statute to distribute, in equal shares, that portion of the personal estate of the intestate that their deceased father would have inherited, had he survived him.
In regard to real estate, parceners have but one entire freehold, and must join in real actions; but this claim rests on different grounds — as between the plaintiffs there is no joinder of contract, or of interest; their rights are separate and distinct. The defendants are answerable to them severally, and each of the heirs has a right to demand and receive his separate share of the residuum. In order to sustain a joint action, in any case, there must be a joint interest, as the proof must sustain the case made out in the pleadings. If two or more unite in one suit, they can not sustain it by proof of distinct, unconnected claims, and perhaps a case could not be selected better calculated to illustrate the position than the one in hand. C. Waldsmith died intestate, leaving several children and grandchildren. The plaintiffs are the children of his son John, whom he survived, and the defendants are his administrators. The suit is brought to recover, in one entire sum, the distributive shares of the personal estate, claimed *154 by three of the heirs. The bare statement of the case shows that they have not one entire claim, but that their claims aro *separate and distinct. Were it otherwise, the unity of interest would extend to the whole estate, and require all the heirs to join. It will not be pretended, that the administrators have not a right to settle with the heirs separately, and take from them releases, without affecting the rights of other heirs; and it is well known to be the constant practice for administrators to make partial advances to the heirs, from time to time, as they may require it, which necessarily leaves unequal balances due.
In a joint action this inequality can not be regarded. The plaintiffs can not obtain separate judgments, nor can the judgment designate the amount due to each; it must be for an entire sum, in which they will have an equal right. On this principle, each heir would be bound by the acts of his co-heirs, who might receive and release to the administrators the whole personal estate. But the language of the statute seems to put this question at rest. It enacts, “that if any person shall die intestate, leaving any goods, chattels, or other personal estate, such goods, chattels, or other personal estate, shall be distributed agreeably to the foregoing course of descents.” The right of the plaintiff is derived from this statute, which directs the administrators to distribute, or pay to each of them the share designated in the preceding sections.
Inasmuch, then, as it is made the duty of the administrators to pay to each heir the share designated by the act, and as the right of the heir to demand arises from the duty of the administrator to pay, the right must follow the duty ; of course each heir must have a separate, distinct, and independent claim, to his distributive share. Such claims can not be joined in one suit, without violating the plainest rules relating to the joinder of actions.
Motion overruled.†

 Note bt the Editor. — Surplusage, when, vii. 268, part 1; vi. 92. When coparceners, etc., must join in suits concerning their common estate, see vii. Ill, part 2; x. 442.