# ROSE v. THIRD NAT. BANK et al.—183 S. W. (2d) 1.

Middle Section.   March 18, 1944.

Petition for Certiorari denied by Supreme Court, July 1, 1944.

Rehearing denied by Supreme Court, October 14, 1944.

554

Garnett S. Andrews and Andrew Ewing, both of Nashville, for appellants.

Goodpasture & Carpenter, of Nashville, for appellee.

FELTS, J.   Complainant filed the bill herein to set up her rights as executrix and legatee of her deceased husband, Granville P. Rose, Jr., under a trust created by his mother, Ella Virginia Rose, now deceased.   The Third National Bank is trustee in this trust and is also executor of Mrs. Rose's will.   The other defendants are her other two sons, William D. and James S. Rose.

The trust was created by a deed dated May 25, 1926, signed by Mrs. Rose and her three sons, William, James, and Granville P., Jr., and also by the Fourth & First National Bank, which was named trustee.   As shown by

recitals in the deed, Mrs. Rose was the widow of G. P. Rose, who had died and left a will giving his wife and three sons each a one-fourth share of his estate; and the home conveyed to him and his wife had become hers at his death. The sons desired that "their mother shall have an income sufficient for her every need so that she may live in the way and manner she has been accustomed to live during the lifetime of her deceased husband." Her home and her share of her husband's estate was not enough, but had to be supplemented by $25,000 from the sons' shares, to provide her "such an income"; and two of the sons, William and James, each gave her $12,500 from his share, the other son, Granville P., Jr., being unable to contribute any of his share because with part of it he had created a trust for the support of Ella Virginia Rose, an afflicted daughter of his by a former marriage. Mrs. Rose's home was worth $10,000 and her share of her husband's estate amounted to $83,885.05. By the deed she conveyed all of this and the $25,000 to Fourth & First National Bank, trustee, all of the personalty being stocks and bonds.

The deed made it the trustee's duty to pay the taxes on all the property, to keep the home in repair, to permit Mrs. Rose to occupy it or use it as she chose, to sell it when she desired, to invest all the personalty in securities approved by her, to collect all the interest or income, and "out of principal or interest as the necessities may require" to pay her, "into her own hands and not into the hands of any other person," $500 per month during her life, "free from the claims of creditors and other persons," without power on her part to anticipate, transfer, or assign any part of it; and, if she desired, the trustee was to pay her an additional $1,000 per year during her life, which was to be paid "into her own hands at any

time during each year as she may desire'' and was to be cumulative. The trustee was to pay itself each year 5% of the gross income and was "to credit the balance of said income, if any, into the principal of said trust property."

The principal at the death of Mrs. Rose was disposed of by the deed as follows: (1) The trust was to terminate and the trustee was to pay James and William $12,500 each, with 4½% interest thereon during the period of the trust; (2) the trustee was to pay to itself into a new trust for Ella Virginia Rose, granddaughter of Mrs. Rose and daughter of Granville P. Rose, Jr., the sum of $25,-000; (3) the balance of the fund was to be paid to the three sons, William, James, and Granville P., Jr., one-third to each or to his legatees or distributees; and (4) the $25,000 in the trust for the granddaughter, after paying the income thereon to her or her guardian during her life, was to be paid to the three sons, one-third to each or his legatees or distributees.

Mrs. Rose occupied her home until her death. The Fourth & First National Bank, trustee, managed the trust until 1931, when Mrs. Rose, having reserved in the deed the power to appoint another trustee, appointed the Third National Bank as trustee and it has acted as trustee ever since. It is also executor of Mrs. Rose, who died July 30, 1938.

The Third National Bank as trustee paid Mrs. Rose the amounts stipulated in the deed until July, 1932. But by that time the great economic depression had so depreciated the securities and the income that it was obvious that if the trustee continued to pay her these amounts it would soon deplete the corpus and defeat the purposes of the trust. So in this emergency, to conserve the corpus and protect the trust, Mrs. Rose agreed

for a limited time to accept "only the net income," and signed a letter to the trustee on July 18, 1932, in which she said:

"This is to state that for a limited time I agree to accept as the monthly allowance only the net income accruing from said Trust Fund.

"I do this for obvious reasons, and am aware that such voluntary action on my part obligates me to receive less than I have been accustomed to receive during the previous existence of this fund."

But she and the trustee continued under this agreement, it paying and she receiving and accepting only the net income, about $350 per month, until July 21, 1938—nine days before her death. On June 29, 1938, her son, Granville P., Jr., died and left a will stating, as his daughter had already been provided for, he bequeathed to his wife, the complainant, all his property, including his interest in the trust property. His will was probated July 2, 1938. On July 21, 1938, Mrs. Rose's son, William, had prepared for her three documents, which she signed. By the first, she undertook to revoke the trust in toto; by the second she added to her will a codicil to dispose of all the trust property, directing that $12,500, with 4½% interest from May 25, 1926, be paid to each of her sons, William and James, that $20,000 be put into a trust for her granddaughter, Ella Virginia Rose, and that the balance be equally divided between William and James; by the third paper, which was a letter to the trustee, she called on it to deliver to her enough of the trust property to equal the sum of the reductions in the payments to her, plus $1,000 per year, during this six-year period—that is, the difference between what she had received and what she could have demanded if she had not agreed to the reductions. She was then nearly 84, blind, ill, and died

July 30. Later that day the trustee segregated from the trust property certain stocks worth $16,207.75, to represent this difference Mrs. Rose had called for, and set up on its books a list of these stocks.

Complainant's bill charged that as Mrs. Rose had reserved no power to revoke the trust, her attempt to do so could not affect the rights of the other beneficiaries; that her letter of July 18, 1932, and her course of conduct pursuant thereto, constituted an acceptance of the income as the amounts due her, a waiver of the balance she otherwise could have demanded, and an estoppel upon her later to call for the difference; and that the letter of July 21, 1938, calling for such difference was not her own free and voluntary act because she was then mentally incompetent and was induced to sign that letter by the undue influence of her son, William. The prayer was that the Third National Bank be enjoined from transferring these segregated stocks from itself as trustee to itself as executor of Mrs. Rose's will and that complainant's rights in the property be declared and enforced.

The answer of the Third National Bank, trustee, admitted Mrs. Rose's attempt to revoke the trust was a nullity. It stated that by her letter of July 18, 1932, she agreed for a limited time merely to accept as the monthly allowance only the net income, without giving up her right to the balance to which she was entitled by the terms of the trust; and that this agreement was without consideration and not binding, and was neither a waiver of the difference between what had been paid her and what was due her ($500 per month plus $1,000 per year) nor an estoppel later to call for such difference. This answer denied the charges that Mrs. Rose was incompetent and had been induced to sign the letter of July 21, 1938, by undue influence. The trustee's answer was adopted by

the other two defendants, and William D. Rose's answer amplified his denials of the charges of incompetency and undue influence.

Some six months later the Third National Bank filed a petition in this cause stating that, because of complainant's suit, it could not transfer the segregated securities from itself as trustee to itself as executor of Mrs. Rose's estate and could not administer them as part of her estate; that the market was uncertain and there was danger that these securities would fall in value; and that complainant ought to be required to give a bond to indemnify petitioner and the others interested against loss from shrinkage in value of the securities.

Upon this petition the chancellor entered a consent decree directing petitioner as trustee to hold one-third of the segregated securities (plus a small amount to cover costs), to transfer to itself as executor the other two-thirds, and to administer them as a part of Mrs. Rose's estate. This decree also relieved petitioner of all responsibility for any loss that might occur through shrinkage in value of the securities it was ordered to hold as trustee pending final determination of this cause.

It appears from a report of the trustee that it has paid the two sons, William and James, $12,500 each, with 4½% interest thereon; that it has put $25,000 in the trust for the granddaughter; and that it is holding as trustee one-third of the balance of the fund (one-third of the segregated securities), and is administering the other two-thirds as executor of Mrs. Rose's estate.

After the proof by depositions had been taken, complainant demanded and was allowed a trial by jury. There were submitted to the jury two issues, one as to whether Mrs. Rose was mentally incompetent at the time she signed the letter of July 21, 1938, and the other as to

562

whether she was induced to sign that letter by the undue influence of her són, William D. Rose. The jury found both these issues in favor of complainant—that is, that Mrs. Rose was incompetent and was induced to sign that letter by the undue influence of William D. Rose. The special chancellor overruled the motion of defendants for a new trial, approved the verdict, and entered a decree for complainant, adjudging that she was entitled to the one-third of the segregated securities and directing the trustee to deliver them to her. Defendants, William D. Rose and the Third National Bank, appealed and have assigned some twenty-five errors.

Complainant has moved to strike the bill of exceptions and affirm the chancellor's decree, and in support of the motion she has submitted a certified copy of the original bill of exceptions, which shows that it was in skeleton form, merely directing the clerk to copy each deposition and the exhibits, each of such directions being: "(The clerk will here copy it in full.)" It appears that the clerk did copy the depositions into the transcript, but they had not been identified or authenticated by the special chancellor trying the cause.

In cases heard by the chancellor upon depositions, the depositions read on the hearing are made part of the record by statute, Code, secs. 8967, 10562; but jury trials in chancery are conducted like jury trials at law, Code, sec. 10579, and all the evidence heard by the jury must be preserved by bill of exceptions, in order to become part of the record. Scruggs v. Heiskell, 95 Tenn. 455, 32 S. W. 386; Minton v. Wilkerson, 133 Tenn. 484, 182 S. W. 238. Depositions not so preserved are not part of the record. Gibson's Suits in Chancery (3 Ed.), sec. 1213(1); Lyon v. Crabtree, 16 Tenn. App. 42, 44, 64 S. W. (2d) 24. The settlement of a bill of exceptions is a high

judicial function, which can be performed only by the judge who tried the case; and every part of the bill of exceptions must be examined and authenticated by him, and the form of his authentication must show that it covers all the separate parts as well as the whole of the bill of exceptions. It is for this reason that it cannot be left to the clerk or any other person to determine what constitutes a part of the bill of exceptions; and a "skeleton" bill of exceptions, like that before us, merely directing the clerk to copy into it a paper which has not been authenticated by the trial judge, is ineffective to make such paper part of the bill of exceptions. Battier v. State, 114 Tenn. 563, 86 S. W. 711; Railway & Light Co. v. Marlin, 117 Tenn. 698, 99 S. W. 367; Lyon v. Crabtree, supra; Frierson v. Smithson, 21 Tenn. App. 591, 113 S. W. (2d) 778. So we must sustain appellee's motion to the extent of striking the depositions.

But this does not compel an affirmance of the chancellor's decree. It only precludes a review of the assignments of error which depend on the bill of exceptions. We must still consider the assignments which depend only upon the technical record—that is, the pleadings and minute entries. Department of Highways and Public Works v. Gamble, 18 Tenn. App. 95, 100, 73 S. W. (2d) 175, 178; Parrish v. Williams, 169 Tenn. 186, 83 S. W. (2d) 895; Carmack v. Fidelity-Bankers Trust Co., 180 Tenn. 571, 177 S. W. (2d) 351. By assignments of this latter class appellants make two questions.

The first of these questions is whether there was a want of necessary parties to this cause. It is urged for appellants that Ella Virginia Rose, the granddaughter, and the Third National Bank, executor of Mrs. Rose, were necessary parties; that neither was made a party or brought before the court; and that this defect of parties

should have prevented the cause from proceeding to a final decree.

This objection, however, was not made by plea, answer, or demurrer; but was raised for the first time in defendants' motion for a new trial, after the hearing and after the verdict. So it came too late to prevent a decree upon the merits. Code, secs. 10406, 10418, 10419. Of course, such a decree would bind only the parties to it and could not affect other persons not before the court. It is true the granddaughter was not before the court, but we think she was not a necessary party. She had no interest in the subject matter of the suit. Her only interest under the trust was to have the $25,000 paid into the new trust for her. That has been done. This suit involves only the balance of the fund, or rather the one-third of it claimed by both complainant and the executor of Mrs. Rose's estate. Since the executor's claim was adverse to that of complainant, the executor was a necessary party. The special chancellor held that the Third National Bank as executor was a party before the court; and appellants say that ruling was error.

It is true the caption of the bill did not describe the Third National Bank as executor of the estate of Mrs. Rose; neither did it describe the bank as trustee under the deed; it merely named the bank as defendant, without specifying in which of its representative capacities the bank was being sued. It is also true that the proper and usual practice is to state in the caption of a bill the character in which a defendant is sued, if that be other than his individual character; but a failure to do this is a formal and not a fatal error; for the capacity in which one is sued is to be determined not alone from the caption of the pleading but from all its allegations; and where they state a cause against a defendant in his representa-

tive capacity, the pleading is sufficient to charge him in that capacity, even though its caption fails to indicate that he is sued in any but his individual character. Stilwell v. Carpenter, 62 N. Y. 639, 2 Abb. N. C. 238; Beers v. Shannon, 73 N. Y. 292; Litchfield v. Flint, 104 N. Y. 543, 11 N. E. 58; Jennings v. Wright, 54 Ga. 537; Waldsmith's Heirs v. Waldsmith's Adm'rs, 2 Ohio 156; Pryor v. Krause (Tex. Civ. App.), 168 S. W. 498; 47 C. J., sec. 327, p. 176; 39 Am. Jur., sec. 6, p. 855; see Hoskins v. Hotel Randolph Co., 203 Iowa 1152, 211 N. W. 423, 65 A. L. R. 1125.

The bill did not allege a cause against the bank in its private capacity, but it did state a cause against the bank in both of its representative capacities. That is, it stated that the bank, in addition to its banking business, was also doing the business of acting as guardians, administrators, and trustees; that it was acting as trustee under the deed and also as executor under the will of Mrs. Rose; and that as such trustee it was holding the segregated securities and claiming the right to transfer them from itself as trustee to itself as executor. The prayer was that it be enjoined from doing this and that complainant's rights in these securities be declared and enforced. We think these allegations left no room for doubt that the bank was sued both as trustee and as executor. To support their claim that the bank was not made a party as executor, appellants quote this paragraph of the bill:

"Complainant charges that said securities above referred to are now being held by the defendant Bank at this time as Trustee. However, unless restrained from doing so your complainant believes and upon information and belief charges that it will transfer the same into its hands as executor to complainant's irreparable damage.

If such transfer is made complainant verily believes that the defendant Bank, as Executor of the estate of Mrs. Granville P. Rose, Sr., would undertake to invoke the six months statute and thus needlessly hinder and delay the complainant in the assertion of her rights hereunder.''

This, we think, shows the bank was sued as executor as well as trustee, it being here described as ''the *defendant*[1] *bank, as Executor.*'' Instead of being, as appellants contend, an explanation for not making the bank a party as executor, this states that the bank as executor was a defendant and explains why an injunction was sought to keep it from transferring the securities from itself as trustee to itself as executor. Apparently, it was the pleader's idea that if the bank got these securities into its hands as executor, it might be able to invoke the statute, Code section 8220, giving executors six months' immunity from suits on claims against their decedents; but that the statute did not extend to a controversy over property in the hands of a third person and not part of the estate of the decedent. Cf. Cohen v. Whitman, 1 Tenn. Ch. 269.

During the course of the litigation, the parties acted as if they understood the bank had been sued both as executor and as trustee. It is true the bank captioned its answer as ''Answer of the Third National Bank, Successor Trustee;'' but it admitted that ''*this*[1] *defendant* is named as Executor therein (the will of Mrs. Rose)''; that ''it is now holding the securities mentioned in Section VI of the bill as Trustee''; and that it was advised that it was its duty to transfer them to itself as executor. Following the caption of the bill, the bank filed a petition,

---

[1] Italics ours.

designating it "Petition of the Third National Bank," and stating that, because of complainant's suit, it could not transfer the segregated securities from itself as trustee to itself as executor; and that complainant should be required to give a bond to indemnify it against loss. A consent decree, signed by solicitors for all the parties, including the solicitor "for the Third Natl. Bank," was entered, directing that "The Third National Bank shall retain in its hands as substitute Trustee" one-third of the segregated securities; that "the Third National Bank, as substitute Trustee under said deed of trust, shall transfer to itself as Executor of the estate of Mrs. Granville P. Rose, Sr." the other two-thirds of these securities; and that "the Third National Bank shall take possession of the above listed stocks (the two-thirds) as Executor of the estate of Mrs. Granville P. Rose, Sr., and proceed to administer said stocks as the property of the estate of Mrs. Granville P. Rose, Sr."

We think this consent decree clearly shows that the bank was before the court both as trustee and as executor. Obviously, with the executor not before the court, these directions to the executor would have been futile and foolish, and would not have been put into the decree if the chancellor or the solicitors had thought the executor was not a party before the court, so that these parts of the decree would be void.

For these reasons we think the bill made the bank a defendant both as executor and as trustee; that the parties so construed it, as shown by their conduct during the litigation; and that the special chancellor correctly so held.

The other insistence of appellants is that upon the facts stated in the bill, as distinguished from its conclusions of law, the executor of Mrs. Rose's estate is entitled to the

segregated securities, including the one-third of them claimed by complainant; and that the chancellor should have so held, withdrawn the issues from the jury, and dismissed the bill. Two grounds are advanced for this position.

First, it is argued that the trust was a spendthrift trust, which vested in Mrs. Rose the right to be paid $500 per month and, if she desired, an additional $1,000 per year during her life, which sums were to be paid either out of the income or the corpus; that the terms of the trust expressly restrained her from anticipating, transferring, or assigning any part of these sums, and it was beyond the power of her, the trustee, or both of them, to do this; that the voluntary action between her and the trustee by which she agreed for a limited time to accept only the net income and the trustee paid her only such income did not affect her right to the balance of the sums due her by the terms of the trust; and that this balance, now represented by the segregated securities, accrued to her during her life and on her death vested in her executor.

To be a valid spendthrift trust, the trust must be an active one and must have been created by, or the trust property must have proceeded from, some person other than the beneficiary, and the trust must have been declared by will duly recorded or deed duly registered. Jourolmon v. Massengill, 86 Tenn. 81, 5 S. W. 719; Porter v. Lee, 88 Tenn. 782, 14 S. W. 218; Henson v. Wright, 88 Tenn. 501, 12 S. W. 1035; White v. O'Bryan, 148 Tenn. 18, 251 S. W. 785; cf. Mayberry v. Redmond, 169 Tenn. 190, 83 S. W. (2d) 897; Sternberger v. Glenn, 175 Tenn. 644, 137 S. W. (2d) 269. One cannot create a spendthrift trust for his own benefit. Such a trust is invalid against his creditors (Menken Co. v. Brinkley, 94

Tenn. 721, 31 S. W. 92; Citizens' Nat. Bank v. Watkins, 126 Tenn. 453, 150 S. W. 96); and the general rule is that it is invalid and ineffective against his right to alienate his beneficial interest. Annotations, 119 A. L. R. 35, 138 A. L. R. 1223. In Restatement of Trusts, Vol. 1, sec. 156, comment e, p. 388, it is said:

"If a person attempts to create a spendthrift trust for his own benefit, he may voluntarily transfer his interest although the terms of the trust contain an express restraint against his voluntary alienation."

It was the view of the learned special chancellor that so much of the trust as was for the benefit of Mrs. Rose was invalid as a spendthrift trust and the attempted restraint upon her right to alienate her beneficial interest was void, because she was the grantor in the deed and the settlor of the trust. We think this is correct. Mrs. Rose's home and her share of her husband's estate amounted to $93,885.05. Two of her sons gave, or in effect loaned, her $25,000 and she herself conveyed all this property, aggregating $118,885.05, to the trustee. This is shown by the deed, the conveying clause of which was as follows:

"Now, therefore, in consideration of the premises and the payment of the sum of Five Dollars ($5.00), by each of the parties hereto to the others, the receipt whereof is hereby acknowledged, Ella Virginia Rose, a widow, has bargained and sold and by these presents does hereby transfer, convey and deliver to the Fourth and First National Bank, of Nashville, Tennessee, as trustee, and its successors in trust and assigns, the following described real and personal property:—" (describing all the property).

It is true that her three sons and the trustee also signed this deed with her. But this does not affect the

fact that she was the grantor in the conveyance to the trustee and the founder of the trust. This idea is further borne out by the controls which she reserved over the trustee and the management of the trust.

Second, it is argued for appellants that even if the restraint upon alienation by Mrs. Rose was invalid, she did not in fact alienate or give up her right to the sums due her under the trust, the $500 per month and the cumulative additional $1,000 per year. It is said that she merely agreed for a limited time to accept only the net income as the monthly allowance; that this agreement was without consideration and not binding; and that her subsequent acceptance of the income was neither a waiver of her right to the difference between what was paid her and what was due her by the terms of the trust nor an estoppel upon her to claim such difference.

It is true that Mrs. Rose's agreement, evidenced by her letter of July 18, 1932, to accept the income as the monthly allowance, was not an enforceable promise, if she had chosen to disregard it. It was only for a limited time and we think it was not supported by a consideration. But she chose to continue the agreement and to continue accepting only the income. Obviously she made this agreement and continued it to conserve the corpus, protect the trust, and make possible the accomplishment of all its purposes. It does not appear that the income was insufficient for her every need or that she had any purpose other than to allow the corpus to remain intact so that on her death it would pass to the other beneficiaries in the manner directed by her deed. She knew, and must have intended, that the balance of the fund, after payment to her of the income, would at her death be paid by the trustee to the other beneficiaries, as she had provided in the deed. It seems hardly possible to ascribe to her

any other intent. The factual situation here is similar to that in Minot v. Baker, 147 Mass. 348, 17 N. E. 839, 9 Am. St. Rep. 713; and to that in In re Curteis' Trusts, L. R. 14 Eq. 217.

In Minot v. Baker, supra [147 Mass. 348, 17 N. E. 847], Captain Percival deposited money with a life insurance company which issued policies promising to pay the yearly interest thereon to Mrs. Maria Gassett, "unless added to the principal sum as provided below," and after her death to pay the principal to Captain Pervical or his executors or administrators. The policies allowed Mrs. Gassett to have the annual "payments added to the principal sum, in order to increase said principal sum," upon giving the company sixty days' notice. She did not call for the full amount of the interest each year but allowed part of it to remain with the company over a period of some twenty years, until her death, and "never objected to the addition, or demanded the interest which had been capitalized." It was held that these additions of interest became part of the capital and passed not to the administrator of Mrs. Gassett but to the administrator of Percival. The court said that it "must assume that the additions of interest to the capital were made with her consent," and "must take the additions to have been made absolutely, and for all purposes, so that her executor has no claim, but the principal fund, as increased, goes . . . to the administrators of Capt. Percival". 147 Mass. 348, 17 N. E. 848, 9 Am. St. Rep. 720.

In re Curteis' Trusts, supra, upon the marriage of the Reverend Cyril Thomas Curteis, some 11,000 pounds in certain consols were transferred to trustees under a marriage settlement, the trust being for him for life, and after his death for his wife, and after the death of the

survivor for the issue of the marriage. Later, he directed the bankers, to whom the trustees had given a power of attorney to receive the income from the trust and pay it to him, to invest 2,000 pounds of his own money in the same character of consols and to make this investment "in the trustees' names." The trustees were never given any notice of this additional investment. It was held that this additional investment went in augmentation of the trust fund and on the death of Curteis passed under the trust instrument to the beneficiaries, rather than to his estate.

We think that the intent and effect of what Mrs. Rose did, in accepting only the income, was to transfer from her to the other beneficiaries the difference between such income and what she might have demanded under the trust, so that it would pass to the beneficiaries upon her death, as she had directed in her deed. It is true that this action on her part was voluntary, or without consideration. But a consideration was not necessary to support the transfer of her interest from herself to the other beneficiaries of the trust. In Restatement of Trusts, Vol. 1, sec. 135, p. 346, it is said:

"Consideration is not essential to the transfer of his interest by the beneficiary of a trust.

"Comment:

"a. A conveyance of the interest of the beneficiary of a trust is neither ineffective nor revocable merely because it is gratuitous.

"b. Partial transfer. The rule stated in this Section is applicable to the transfer by the beneficiary of a part of his interest as well as to the transfer of his entire interest.

"c. Promise to transfer. A promise by the beneficiary of a trust to transfer his interest in the future is enforce-

able if, but only if, the requirements for the creation and enforcement of contracts are complied with (see section 134(2); compare section 30).''

Mrs. Rose's taking only the net income and allowing the corpus to remain so as to pass under her deed operated, we think, as a present transfer which was valid and irrevocable, without regard to any question of estoppel or consideration.

But, assuming that she had a right to revoke such transfer or call on the trustee to pay her such difference between the net income and the amounts stipulated in the trusts, she never did this. The verdict of the jury was that the letter relied on by appellants was not the act of Mrs. Rose because she was mentally incompetent and because she was induced to write that letter by undue influence of her son, William D. Rose. In the absence of the evidence, properly preserved by a bill of exceptions, there is a conclusive presumption that the evidence supported the verdict. Wilder v. Williamson, 22 Tenn. App. 692, 697, 126 S. W. (2d) 341, 344; Smith v. Moss, 171 Tenn. 132, 101 S. W. (2d) 130.

For these reasons the decree of the special chancellor is affirmed and the costs of the cause are adjudged against appellants and the sureties on their appeal bonds. The cause will be remanded to the chancery court for further proceedings not inconsistent with this opinion.

Howell and Hickerson, JJ., concur.