Hazel GOSS, Appellant,

v.

John E. HUTCHINS, Executor of the Estate of A. Myrtle Hutchins, Appellee.

Supreme Court of Tennessee,
at Knoxville.

March 28, 1988.
Rehearing Denied May 31, 1988.

John Ben Pectol, Dayton, for appellant.

Gary N. Fritts, Dayton, Mark A. Ramsey, Spears, Moore, Rebman & Williams, Chattanooga, for appellee.

## OPINION

FONES, Justice.

This tort case was brought after plaintiff non-suited a prior action. The trial court denied defendant's motion for summary judgment based on the contention that the personal representative of the Estate of Annie Hutchins had not been sued in the first case. A jury trial was held and the jury awarded damages to plaintiff. The Court of Appeals held that the savings statute was not applicable and the statute of limitations had expired. We granted permission to appeal.

On 18 October 1980, an automobile operated by George Goss collided with another automobile in Rhea County, Tennessee. Plaintiff, Hazel Goss, was a passenger in the Goss automobile, and sustained serious injuries as the result of the collision. The driver of the other automobile, Mrs. Annie Myrtle Hutchins, and her passenger, Mrs. Wanda F. Angel, died from injuries received in the accident. Defendant, John E. Hutchins, is the executor of the estate of Annie Myrtle Hutchins.

On 10 April 1981, the executrix of the estate of Wanda F. Angel filed a wrongful death action against George Goss and John Hutchins in his capacity as executor of Mrs. Hutchins' estate. On 1 October 1981, George Goss filed a cross complaint and a counter complaint. Consolidated with Mr. Goss's cross complaint and counter complaint was plaintiff Helen Goss's original complaint for damages for injuries she received in the accident.[1] The caption of the consolidated complaint read:

GEORGE E. GOSS, HAZEL GOSS, JOHNNY GOSS (A MINOR), AND CONNIE GOSS (A MINOR), b/n/f HAZEL GOSS,

Plaintiffs

vs.

THE ESTATE OF ANNIE MYRTLE HUTCHINS, AND THE ESTATE OF WANDA F. ANGEL,

Defendants

The summons in *George Goss, et al. vs. Estate of Myrtle Hutchins*, directed that the summons and complaint be served upon "Gary N. Fritts, Esq. Atty. for 'Peanut' Hutchins, Adm. of said Estate".[2] According to the summons, the sheriff served

---

1. In addition, original complaints were filed on behalf of the Goss's two grandchildren, who were also injured in the accident, by plaintiff as next friend.

2. Mr. Hutchins qualified as executor of the estate of Annie Myrtle Hutchins. No question has been raised by defendant with respect to this variance. In *Carpenter v. Johnson*, 514 S.W.2d 868 (Tenn.1974) we held such a variance to be immaterial.

Gary Fritts on 5 October 1981. On 2 November 1981 the "Estate of Annie Myrtle Hutchins" filed its answer. The answer stated in pertinent part:

## I.

The complaint fails to state a claim or cause of action against this defendant upon which relief may be granted.

## II.

This defendant denies the jurisdiction of this Court over the subject matter and/or person of this defendant and denies that process was properly issued and/or executed.

On 12 February 1982, plaintiff and her husband entered a voluntary non-suit of their suit pursuant to T.R.C.P. 41.01.

On 12 February 1983, plaintiff filed her complaint in this action. This complaint was captioned "Hazel Goss vs. The Estate of Annie Myrtle Hutchins and the Estate of Wanda F. Angel." (The action against the Angel Estate was later non-suited.) The summons directed the sheriff to serve "Peanut Hutchins, Administrator of said Estate." The summons indicates that Hutchins was served on 19 February 1983.

On 11 April 1983, the Estate of Annie Myrtle Hutchins filed a motion to dismiss the action as "improperly brought" against an estate rather than its representative. In addition, the estate filed a motion for summary judgment on the ground that the statute of limitations barred plaintiff's action. Plaintiff filed a motion to amend her complaint to sue defendant in his capacity as Executor of the Estate of Myrtle Hutchins. The trial court granted plaintiff's motion to amend the complaint, and denied defendant's motion for summary judgment. In his memorandum opinion, the trial judge noted that the Estate of Annie Myrtle Hutchins was not a proper party defendant, but that amendment of the complaint to include a proper party defendant was proper. The judge then held that the statute of limitations did not bar plaintiff's action due to the operation of the saving statute, T.C.A. § 28-1-105. A trial was

then held and the jury awarded plaintiff damages for her injuries in the amount of $45,000.

On appeal, the Court of Appeals held that the trial court properly granted plaintiff's motion to amend her complaint in the second action. In addition, the court held that pursuant to T.R.C.P. 15.03, the amended complaint would relate back to the commencement of the second action on 12 February 1983. The Court of Appeals then held that the savings statute was not applicable to plaintiff's action because the parties to the second action were not identical with the parties to the first action. The court then concluded that as plaintiff commenced her second action after the expiration of the statute of limitations, that action was barred, and the court ordered that action dismissed.

The first issue this Court must address is whether decedent's estate was a proper party defendant to plaintiff's action.

At common law an action could not be brought against a deceased tort feasor. *See, Brown v. Stephens,* 165 Tenn. 85, 87, 52 S.W.2d 146, 146 (1932) and cases there cited. In 1935, the Legislature abrogated the common law rule by adopting the predecessor of the current T.C.A. § 20-5-103. This section provides in relevant part:

*Causes surviving death of tort-feasor.—*
(a) In all cases where a person shall commit a tortious or wrongful act causing injury or death to another, or property damage, and such person committing such wrongful act shall die before suit is instituted to recover damages therefor, such death of such person shall not abate any cause of action which the plaintiff would have otherwise had, but such cause of action shall survive and may be prosecuted against the personal representative of such tort-feasor or wrongdoer.

(b) The common law rule abating such actions upon the death of the wrongdoer and before suit is commenced is abrogated.

This survival statute does not create a new cause of action, but simply preserves

a cause of action against a tort-feasor who subsequently dies. *Goins v. Coulter*, 185 Tenn. 346, 348–49, 206 S.W.2d 379, 380 (1947). An action preserved by this section may only be instituted against the personal representative of the tort-feasor. *Brooks v. Garner*, 194 Tenn. 624, 626, 254 S.W.2d 736, 737 (1953).

Plaintiff's cause of action in the present case is a tort action against a tort-feasor who has subsequently died. Plaintiff's cause of action survived the tort-feasors death solely by the virtue of T.C.A. § 20–5–103. Pursuant to that section, suit may only be instituted against Mrs. Hutchins' personal representative. Thus, the Estate was not a proper party defendant to plaintiff's action.

The next issue is whether plaintiff sued the personal representative of the Hutchins' Estate in the first lawsuit, filed on 1 October 1981, so that the second suit was timely filed by virtue of the savings statute.

Defendant argues that the savings statute is inapplicable to the present action because plaintiff in her first action sued an estate. Defendant cites in his argument the general rule that an estate is not a proper party to sue or be sued because an estate is not a legal entity.[3] *See McLean v. Chanabery*, 5 Tenn.App. 276 (1926); *see also, Heuschel v. Wagner*, 73 Colo. 327, 215 P. 476 (1923); *Schoeller's Estate v. Becker*, 33 Conn.Sup. 79, 360 A.2d 905 (Super.Ct.1975); *Estate of Norton v. Hinds*, 182 Ga.App. 35, 354 S.E.2d 663 (1987); *Bavel v. Cavaness*, 12 Ill.App.3d 633, 299 N.E.2d 435 (1973); *Wilson v. Kings' Estate*, 131 Ind.App. 412, 170 N.E.2d 63 (1960); *Skinner v. Morrow*, 318 S.W.2d 419 (Ky.1958); *In re DeGheest's Estate*, 360 Mo. 1002, 232 S.W.2d 378 (1950); 31 Am. Jur.2d *Executors and Administrators* § 713 (1967). Defendant contends that as an estate is not a legal entity, an action brought against an estate is a complete nullity. *Bavel v. Cavaness, supra*, 299

N.E.2d at 438. Defendant argues that if the first action is a complete nullity, the savings statute cannot be used to avoid the statute of limitations because there is nothing to save. *Id.*

Defendant clearly bases his contention that plaintiff sued only the estate of Annie Myrtle Hutchins in her first action upon the caption of the complaint filed in that action. T.R.C.P. 10.01 does require the caption of the complaint to include the names of all parties. The caption of plaintiff's complaint in the first action identifies as defendants "The Estate of Annie Myrtle Hutchins" and "The Estate of Wanda F. Angel." The caption does not identify the personal representative of either decedent.

The rule in Tennessee before the adoption of the Tennessee Rules of Civil Procedure was that the failure to correctly identify a defendant in the caption was not a fatal defect if the bill itself stated a cause of action against the defendant. *See Altman v. Third National Bank*, 30 Tenn. App. 81, 88, 203 S.W.2d 701, 704 (1947); *Rose v. Third National Bank*, 27 Tenn. App. 553, 564–65, 183 S.W.2d 1, 5–6 (1944). The adoption of the Tennessee Rules of Civil Procedure has not changed this rule. Although Rule 10.01 requires the caption of a complaint to name all parties, this is merely a technical requirement. *See Blanchard v. Terry & Wright, Inc.*, 331 F.2d 467, 469 (6th Cir.1964), *cert. denied*, 379 U.S. 831, 85 S.Ct. 62, 13 L.Ed.2d 40 (1964); 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1321 at 460–61 (1969). The caption requirement of Rule 10 is merely for identification purposes, and does not control who is a party in the action. *Greenwood v. Ross*, 778 F.2d 448, 452 (8th Cir.1985); *Blanchard v. Terry & Wright, Inc., supra.* at 469; 5 C. Wright & A. Miller, *supra*, at 458–59. The issue of who is a proper party defendant must be determined from the allegations of the complaint. *Tyrolf v. Veterans Administration*, 82 F.R.D. 372, 374–75 (E.D.La.

---

3. T.C.A. § 20–2–112 does allow an estate to be sued as a party defendant in a wrongful death action under certain limited circumstances. This capacity is limited, however, to the circumstances prescribed therein. As the present action is not a wrongful death action, T.C.A. § 20–2–112 clearly does not apply.

1979); 5 C. Wright & A. Miller, *supra.* An examination of the complaint filed in the first action reveals that a suit against the decedent's representative was intended by plaintiff.

Moreover, the summons in the first action directed the sheriff to serve Gary Fritts, the attorney for the administrator of the Hutchins' estate, naming the personal representative, "Peanut" Hutchins. In the case of *McLean v. Chanabery,* 5 Tenn.App. 276 (1926), the Court of Appeals held that an estate was not a legal entity and therefore judgment for the estate was void. In its opinion, the Court of Appeals noted:

It will be seen that neither in the warrant, the judgment nor the rule docket ... was any plaintiff named or stated except the "Estate of R.R. Swepson,".... Certainly, under these circumstances, the words "Estate of R.R. Swepson," without more cannot be held to describe any legal entity or quasi-legal entity having any capacity whatever to institute suit.

*Id.* at 279. In the first action, plaintiff identified in her summons the actual intended defendant, the administrator of the Hutchins estate, and process was served upon the personal representative's lawyer.

■ Defendant does not contend that he did not receive either the summons or plaintiff's complaint. In fact, defendant, through his attorney, filed an answer to plaintiff's complaint. Defendant, having actual notice of plaintiff's summons and complaint, and being knowledgeable of his relationship to the estate of Annie Myrtle Hutchins, knew that plaintiff's action against the Estate was intended as a suit against defendant in his capacity as executor of the estate. *See Greenwood v. Ross,* 778 F.2d 448, 452 (8th Cir.1985); *Miller v. Director,* 146 F.Supp. 674, 676 (S.D.N.Y. 1956); *aff'd,* 243 F.2d 527 (2d Cir.1957). Defendant clearly was not prejudiced by the omission of the names of the personal representatives in the caption.

Therefore, we must conclude that although the caption of the complaint was defective, this defect did not prejudice defendant. We hold that plaintiff, in her first action, sued Hutchins in his representative capacity as the personal representative of the estate of Annie Hutchins.

The Court of Appeals, in its opinion, found that the trial court properly allowed plaintiff to amend her complaint in the second action to sue defendant in his representative capacity. In addition, the court held that this amendment related back to the filing of the second action under T.R.C. P. 15.03. We concur in those findings. The Court of Appeals then held the second action was not saved by T.C.A. § 28–1–105 because the first action was a nullity. As we have determined that the defendant in the first action was in fact the decedent's personal representative, the first action was not a nullity.

■ It follows that plaintiff is entitled to invoke the savings statute. The identity of parties requirements stated in *Moran v. Weinberger,* 149 Tenn. 537, 260 S.W. 966 (1924), is clearly met. Defendant, in his representative capacity, was the defendant in both actions. The second action was filed within one year of the voluntary nonsuit in the first action. Thus, the time requirement stated in T.C.A. § 28–1–105 has been met, and the saving statute saves the second action from the limitations bar.

■ Even if plaintiff had in fact sued an estate in her first action, defendant would have been unable to utilize that fact to defeat the operation of the savings statute. T.R.C.P. 9.01 states:

*Capacity.*—It is not necessary to aver the capacity of a party to sue or be sued or the authority of a party to sue or be sued in a representative capacity or the legal existence of an organized association of persons that is made a party. *When a party desires to raise an issue as to the legal existence of any party* or the capacity of any party to sue or be sued in a representative capacity, he shall do so by specific negative averment, which shall include such supporting particulars as are peculiarly within the pleader's knowledge. (Emphasis added.)

The defendant's answer asserting that the complaint failed to state a claim upon which relief could be granted, denying subject matter jurisdiction as well as denying that process was properly issued and executed, does not meet Rule 9.01's requirement of a specific negative averment with supporting particulars.

As pointed out herein, pursuant to T.C.A. § 20–5–103, an action against an alleged tort feasor who is deceased can only be prosecuted against the personal representative of such decedent. To raise the issue of lack of legal existence or capacity in this case, it was necessary that defendant answering on behalf of the representative of the decedent's estate, assert in clear and unmistakable English, that has a single meaning, to-wit: that no party having the legal capacity to represent the decedent has been sued or served with process. The fact that such a specific negative averment will likely result in a prompt curative amendment by plaintiff does not reduce the stringency of the rule. Defendant's counsel in oral argument implicitly admitted that the answer was couched in non-specific terms to avoid that result.

Thus, we hold that defendant did not raise by motion or by specific negative averment the issue of the legal existence of the estate in the first action. Therefore, defendant waived that issue. The effect of defendant's waiver of that issue was that the proper party against whom to prosecute the tort action, the representative of the deceased alleged tort-feasor, Annie Myrtle Hutchins, was properly sued and served in the first action. As the parties in the first action are identical to the parties in the second action, and as the second action was filed within one year of the voluntary non-suit, the savings statute is applicable to the instant case.

For the foregoing reasons, the judgment of the Court of Appeals is reversed, and the judgment of the trial court approving the jury verdict in favor of plaintiff is affirmed. Costs are adjudged against defendant.

HARBISON, C.J., and COOPER, DROWOTA and O'BRIEN, JJ., concur.

## OPINION ON PETITION TO REHEAR

Defendant complains that the Court of Appeals and this Court gave consideration only to the pre-trial issues relied upon by defendant and overlooked issues that occurred during the trial.

We elect to address those issues rather than relate their history in the appellate courts and why they were not heretofore fully articulated.

### I.

Defendant contends that the trial judge committed prejudicial error in allowing Dr. Dabbs to examine plaintiff's wrist, "in full view and hearing of the jury in open court over defendant's objection ... eliciting undue sympathy for plaintiff."

Mrs. Goss who sustained multiple injuries on 18 October 1980, was treated at Rhea County Hospital by a doctor other than Dr. Dabbs. In December 1980 she saw Dr. Dabbs for the first time. He testified that at that time he felt her fractured right wrist was her most significant injury because it had not healed properly. He examined x-rays that revealed she had a malunion of the bone which in his opinion would cause future difficulty. He decided that she needed bone surgery, and since he was a general surgeon he referred her to Dr. Pratt, an orthopedic surgeon. Dr. Dabbs testified that Dr. Pratt performed surgery on Mrs. Goss's right wrist, removing part of the bone. While he did not assist at the surgery, he saw her during her hospitalization following Dr. Pratt's surgery and received reports from Dr. Pratt.

Against this background plaintiff's counsel asked Dr. Dabbs if, in his opinion, Mrs. Goss had sustained any permanent disability to her wrist. Defendant's counsel objected on the ground that a proper foundation had not been established.

As plaintiff's direct examination and defendant's objections proceeded, somewhat inartfully on both sides, the trial judge interceded and noted that plaintiff had ex-

hibited some obvious but unspecified abnormality in her right wrist which the jury had seen. He then asked Dr. Dabbs if he had seen her wrist since the operation. Dr. Dabbs responded that he had "seen her for a lot of things but I never specifically examined her wrist to determine....." Implicitly, Dr. Dabbs was explaining that he had not examined her and her wrist to specifically determine whether or not she had any permanent disability.

From that point forward at the trial the transcript reads as follows:

THE COURT: Let him look at it now.

MR. PECTOL: Can you do that, doctor? Can you take a look at the wrist?

THE WITNESS: Sure, be happy to.

MR. FRITZ: Your Honor, I object to this type of procedure because he has already testified that orthopedics is not his specific type of specialty.

THE COURT: I will let you cross examine him on that.

### EXAMINATION BY MR. PECTOL

Plaintiff's counsel then proceeded with the direct examination of Dr. Dabbs who was allowed to testify in material part as follows:

She has a scar over her forearm down close to the wrist and a part of that bone is missing. That is called the ulnar bone. The ulnar bone and the radius bone make up one's face of the wrist joint. She has a rather severe degree of limitation of her wrist in all motions, and it is a very painful, very tender joint so—and I can testify with reasonable degree of medical certainty that this is going to be permanent.

MR. RAMSEY: Your Honor, we would like to enter an objection.

THE COURT: Overruled.

▪ The transcript provides no description of how the examination of Mrs. Goss's wrist was conducted, the duration thereof or any other details. Defendant's counsel made no contemporaneous objection to the examination itself, his objection being directed solely to the fact that Dr. Dabbs was not an orthopedic specialist. The basis

upon which defendant now rests his complaint, to-wit: eliciting undue sympathy of the jury could have been removed by a timely objection requesting that the examination take place out of the presence of the jury. If the trial judge had refused that request, then counsel could have inserted into the record a description of the examination, the time required and any other matters pertinent to a consideration by the appellate courts of whether the examination could have aroused undue sympathy. As it is, the record shows only that the jurors apparently had a short look at a healed operative scar almost four years after the operation was performed, an operation which had left the patient with limitations of motion in the wrist joint. On this record, we are unable to make any determination other than that the brief display of the wrist could hardly inflame the passions of the most tender-hearted juror. Defendant has waived consideration of this issue. *See Layne v. Speight*, 529 S.W.2d 209 (Tenn.1975) and *Bass & Co. v. Parker*, 208 Tenn. 38, 343 S.W.2d 879 (1961).

Defendant relies upon *Gulf Refining Co. v. Frazier*, 15 Tenn.App. 662 (1933). Nothing occurred in this case comparable to the examination and expression of pain by plaintiff in *Frazier*.

### II.

Defendant's second and third trial issues are interrelated and will be dealt with as one issue.

Defendant states the issues as follows: (1) whether the trial court erred in giving an instruction that coerced a juror's opinion after the jury reported deadlocked; and (2) whether the trial court erred in denying defendant's motion for a new trial in face of the juror affidavit that the instruction adversely influenced his deliberations.

The jury retired to begin its deliberations at 2:27 p.m. Forty-three minutes later, at 3:10 p.m. the jury returned to the courtroom where the following occurred.

THE COURT: Have you arrived at a verdict, gentlemen of the jury?

MR. COCHRAN: No, sir.

THE COURT: You've got to go back out. Don't tell me anything more. Just go back out. It's early in the day. You all go back out.

MR. COCHRAN: All right.

MR. PECTOL: Your Honor—

THE COURT: Do you have a question you want to ask?

MR. COCHRAN: No, sir. We don't have any questions.

THE COURT: Don't tell me how you might be split. Just go back out.

MR. COCHRAN: I don't think it will do any good to go back out, Your Honor.

THE COURT: It's early in the day yet. Can't do anything else in the rain anyway.

(Whereupon the jury retired at 3:11 p.m.)

(Whereupon the jury returned into open court at 3:42 p.m., whereupon, the following occurred:)

THE COURT: Mr. Foreman—

MR. COCHRAN: We find for the plaintiff.

THE COURT: And what do you set her damages at?

MR. COCHRAN: Forty-five.

THE COURT: You find for the plaintiff and set her damages at forty-five thousand, so say you all? If so, raise your right hand.

It is a unanimous verdict. Thank you very much. You are at liberty to leave.

Defendant made no objection at the trial to the action of the trial judge nor did defendant request the *Kersey* charge. In the motion for a new trial, defendant presented the affidavit of one juror to the effect that the jury was deadlocked before Judge Greer's instruction to return, with the implication that the deadlock was caused by affiant's fixed opinion. The affidavit went on to say that affiant interpreted Judge Greer's instruction as being mandatory in nature "in that the juror's had to agree on a verdict" and that affiant "would not have changed his opinion without being instructed to do so by Judge Greer."

■ "[A] juror may not testify ... as to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict or indictment or concerning his mental processes in connection therewith...." *State v. Blackwell,* 664 S.W.2d 686 (Tenn.1984). The three exceptions to that rule, extraneous prejudicial information, outside influence, and an antecedent agreement to be bound by a quotient or majority result were obviously not involved in this case. Thus, the juror affidavit cannot be considered.

Defendant also contends that the trial judge should have either declared a mistrial or given the charge approved in *Kersey v. State,* 525 S.W.2d 139 (Tenn.1975), as the replacement for the *Allen* or dynamite charge.

■ The trial judge did not give any charge to the jury. At 3:10 p.m., on a rainy day, after the jury had been out of the courtroom only forty-three minutes, the trial judge said, in effect you must return to the jury room for further deliberation, no more, no less. In the time frame in which the trial judge acted, and in consideration of the length of the trial and the nature of the issues to be determined by the jury, we find nothing coercive about the trial judge's action and no deviation from the requirements of *Kersey* or *Vanderbilt University v. Steely,* 566 S.W.2d 853 (Tenn. 1978).

The petition to rehear is denied.